Filed 12/17/14

**CERTIFIED FOR PUBLICATION**

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SECOND APPELLATE DISTRICT

DIVISION SEVEN

| | |
|---|---|
| GERMAINE JUDGE, | B248533 |
| Plaintiff and Appellant, | (Los Angeles County Super. Ct. No. BC460592) |
| v. | |
| NIJJAR REALTY, INC., et al., | |
| Defendants and Respondents. | |

APPEAL from an order of the Superior Court of Los Angeles County, Ruth Ann Kwan, Judge. Appeal dismissed.

The Dion-Kindem Law Firm, Peter R. Dion-Kindem, P.C., Peter R. Dion-Kindem; The Blanchard Law Group, APC and Lonnie C. Blanchard, III, for Plaintiff and Appellant.

Atkinson, Andelson, Loya, Ruud & Romo, Christopher S. Andre and Ronald W. Novotny for Defendants and Respondents.

_____

## INTRODUCTION

Plaintiff Germaine Judge appeals from an order vacating an interim arbitration award. Although an order vacating a final arbitration award is appealable under Code of Civil Procedure[1] section 1294, subdivision (c), the order from which Judge appeals vacated a "clause construction award" that did not resolve the entire arbitration. Instead, the arbitrator's award determined only, as a threshold matter, that Judge's class and representative claims were subject to arbitration. The clause construction award did not rule on the merits of those claims. We conclude that, because the arbitrator has not ruled on any of the substantive issues in the arbitration, the order from which Judge appeals did not vacate a final arbitration award and is not appealable. We therefore dismiss the appeal.

## FACTUAL AND PROCEDURAL BACKGROUND

Nijjar Realty, Inc., doing business as PAMA Management Company, (Nijjar Realty) is in the business of real estate property management. Mike Nijjar is the owner and a president of Nijjar Realty. Swarnjit S. Nijjar and Daljit Kler are also presidents of Nijjar Realty. On October 18, 2010 Nijjar Realty hired Judge as a resident property manager. Judge's employment with Niijar Realty continued until April 22, 2011, when Nijjar Realty terminated her employment.

A.      *Judge Files This Action and a Related Class Action*

On May 6, 2011 Judge filed this action (case No. BC460592, the "individual/PAGA action"). Her first amended complaint alleged various employment-related and Labor Code causes of action, including claims for unpaid compensation, meal

---

[1]      Undesignated statutory references are to the Code of Civil Procedure.

and rest period premiums, waiting time penalties, and wrongful termination. Under the Private Attorney General Act (PAGA; Labor Code § 2698 et. seq.) Judge alleged similar and related causes of action on behalf of herself and other aggrieved employees. On February 14, 2012 Judge filed a class action (case No. BC478836, the "class action") against three defendants, Nijjar Realty, Mike Nijjar, and Daljit Kler (the Nijjar defendants), alleging six similar employment and Labor Code claims on behalf of herself and the class members.[2]

On April 9, 2012 the trial court determined that the individual/PAGA action and the class action were related cases within the meaning of Los Angeles Superior Court former rule 7.3(f) (now rule 3.3(f)) and designated the individual/PAGA action as the lead case. The court denied Judge's subsequent ex parte application to consolidate the two cases.[3] The court never consolidated the two actions.

B.    *The Trial Court Grants the Nijjar Defendants' Petitions To Compel Arbitration of Judge's Individual Claims Only and Stays Both Cases*

In April 2012 the Nijjar defendants filed a petition in the individual/PAGA action to compel arbitration of Judge's claims and staying the action pending completion of arbitration. The petition was based on an arbitration agreement that Judge had signed while she was an employee of Nijjar Realty. The arbitration agreement provides, in relevant part, "By accepting employment with Atlas Resources/Client,[4] the undersigned

---

[2]    On February 17, 2012 Judge asked the trial court to dismiss the first five causes of action of her first amended complaint in the individual/PAGA action without prejudice because they were duplicative of causes of action in her complaint in the class action.

[3]    We take judicial notice of the trial court's April 9 and 23, 2012 minute orders in the individual/PAGA action. (See Evid. Code, §§ 452, subd. (d), 459.)

[4]    On December 13, 2010 PAMA Management Company contracted with Atlas Resources, Inc. "to provide administrative services, including preparation of payroll and initial hiring paperwork." The arbitration provision appeared in a document entitled

3

agrees to submit any and all previously unasserted claims, disputes, lawsuits or controversies arising out of or relating to his or her application or candidacy for employment, his or her employment, or the cessation of his or her employment to binding arbitration before a neutral and unbiased arbitrator." The arbitration agreement contained multiple references to the American Arbitration Association (AAA), indicating that arbitration would be before the AAA. Although the arbitration agreement did not mention the Federal Arbitration Act (FAA) (9 U.S.C. § 1 et seq.) or the California Arbitration Act (CAA) (§ 1280 et seq.), the Nijjar defendants' maintained that the arbitration agreement was governed by the FAA because Nijjar Realty made purchases from states other than California and thus was engaged in interstate commerce within the meaning of the FAA.

The Nijjar defendants also filed a petition to compel arbitration of and to stay the class action. Again relying on the FAA, they asked the trial court "to compel the arbitration [of] Plaintiff's claims against them on an individual and not a class-wide basis" and to stay the action "pending the completion of arbitral proceedings." Citing *AT&T Mobility LLC v. Concepcion* (2011) 563 U.S. ___ [131 S.Ct. 1740, 179 L.Ed.2d 742] and *Stolt-Nielsen S.A. v. AnimalFeeds Int'l Corp.* (2010) 559 U.S. 662 [130 S.Ct. 1758, 176 L.Ed.2d 605] (*Stolt-Nielsen*), the Nijjar defendants asked that "arbitration be ordered as an individual as opposed to a collective basis . . . ." They argued that the arbitration agreement "contain[s] no basis at all for authorizing class arbitration proceedings, thereby requiring that Plaintiff be compelled to arbitrate her claims against Defendants individually and not as part of a class action."

Judge opposed both petitions to compel arbitration. In both cases Judge argued, among other things, that the FAA did not govern the arbitration agreement. In the class action Judge argued that if the court were inclined to grant the petition the court "must

---

"Atlas Resources, Inc. — New Employee Information Form," which Judge signed on December 23, 2010.

4

send all of the claims asserted by Plaintiff to arbitration, including the PAGA claims and the class action claims."

On September 11, 2012 the trial court held a hearing on the Nijjar defendants' petitions to compel arbitration. At that hearing the following exchange occurred between counsel and the court:

"[Counsel for Judge]: Your Honor, with respect to the PAGA action and also the class action, there's no arbitration or collective action or representative action proscription in the arbitration agreement. It doesn't say you can only file an individual action, you can't file a class action, you can't file a representative action. And the arbitration agreement as you noted in your order is very broad, includes all claims of any nature. There are many cases that hold that the issue is to the extent that the claims to be arbitrated when there's been no actual waiver of class action. It's up to the arbitrator. That's exactly what the [American Arbitration Association (AAA)] arbitration rules say, that the arbitrator decides the scope of the arbitrable claims. And that's what the arbitrator should decide. If they're saying that the arbitration should be conducted under AAA rules and the AAA rules say, we're going to decide — the AAA is going to decide what claims —

"The Court: Then you can make that argument to the arbitrator. I have no right to force them, force you into a class arbitration when the agreement doesn't — is silent on that issue, that's what I'm saying.

"[Counsel for Judge]: Well, when it's silent?

"The Court: If you want to bring up that issue with the arbitrator, I don't think you're foreclosed from doing so.

"[Counsel for Judge]: Okay. As long as that's clear, your Honor, then that's fine."

"[Counsel for Nijjar defendants]: But for the record, it's our position that he's waived that. That he can't do that with the arbitrator. That the AAA rules absolutely do not provide for the arbitrator to determine —

"The Court: Well, then you can talk to the arbitrator regarding that issue.

5

"[Counsel for Judge]: Yes, the AAA rules —

"The Court: What I'm saying is that I can't force your client to do a class arbitration because that was not necessarily provided for, okay?

"[Counsel for Judge]: Right. But the fact that it wasn't provided for does not mean given the breadth of the agreement which does not preclude it, does not allow it under arbitration the AAA rules. And if you're saying that the AAA triple rules apply in whatever the arbitrator decides it to be.

"The Court: You're not precluded from bringing whatever argument you wish to bring before the arbitrator if the AAA rules provides — the arbitrator allows the arbitration agreement. And under the AAA rules would allow you to bring up those arguments, okay?

"[Counsel for Judge]: Thank you."

After additional argument, the trial court granted the Nijjar defendants' petition to compel arbitration and stay proceedings in the individual/PAGA action. The trial court concluded that the FAA governed the arbitration agreement and that Judge's "employment-related claims" and her "*individual* PAGA claims [were] covered by the Agreement." The court also granted the Nijjar defendants' petition in the class action to compel arbitration and stay proceedings "only as to Plaintiff's individual claims," again concluding that the FAA applied.[5] Citing *Stolt-Nielson*, *supra*, 559 U.S. 662, the trial court concluded that, because "the Agreement is silent on the issue of class arbitration, arbitration cannot be compelled on a class-wide basis. Therefore, Defendants' motion to compel arbitration is granted as to Plaintiff's individual claims only." Both cases proceeded to arbitration before the AAA, pursuant to the terms of the arbitration agreement.

---

[5]     We take judicial notice of the trial court's September 11, 2012 minute orders in the individual/PAGA and class action. (See Evid. Code, §§ 452, subd. (d), 459.)

6

C.    *The Arbitrator Issues a Scheduling Order and a Clause Construction Award*

On December 7, 2012 the arbitrator issued a scheduling order. The arbitrator noted that the trial court had "found the arbitration agreement to be enforceable pursuant to the [FAA]," and she stated that, "[e]xcept as provided to the contrary in the arbitration agreement, the proceeding will be governed by the FAA, California substantive law, the Employment Dispute Resolution Rules of the [AAA], and the AAA's Supplementary Rules for Class Arbitrations." In paragraph 7, entitled "The Clause Construction Award," the arbitrator stated that she would be issuing a "partial final award on the construction of the arbitration clause" in accordance with "Rule 3 of the Supplementary Rules."[6] She gave the parties an opportunity to submit briefs on the issue, set a briefing schedule, and scheduled a telephonic hearing for January 14, 2013. The arbitrator also established a discovery and motion schedule, and she set an evidentiary hearing for April 22-24, 2013. On January 21, 2013 the arbitrator issued a lengthy clause construction award in which she concluded that the arbitration agreement permitted arbitration of class and representative claims.

---

[6]    The rules to which the arbitrator referred are the AAA's Supplementary Rules for Class Arbitrations, effective October 8, 2003. Rule 3, entitled "Construction of the Arbitration Clause," provides in relevant part: "Upon appointment, the arbitrator shall determine as a threshold matter, in a reasoned, partial final award on the construction of the arbitration clause, whether the applicable arbitration clause permits the arbitration to proceed on behalf of or against a class (the 'Clause Construction Award'). The arbitrator shall stay all proceedings following the issuance of the Clause Construction Award for a period of at least 30 days to permit any party to move a court of competent jurisdiction to confirm or to vacate the Clause Construction Award. Once all parties inform the arbitrator in writing during the period of the stay that they do not intend to seek judicial review of the Clause Construction Award, or once the requisite time period expires without any party having informed the arbitrator that it has done so, the arbitrator may proceed with the arbitration on the basis stated in the Clause Construction Award. If any party informs the arbitrator within the period provided that it has sought judicial review, the arbitrator may stay further proceedings, or some part of them, until the arbitrator is informed of the ruling of the court."

D.    *The Trial Court Grants the Nijjar Defendants' Petition To Vacate the Clause Construction Award in the Individual/PAGA Action*

On March 8, 2013 the Nijjar defendants filed a petition in the individual/PAGA action (but not in the class action) to vacate the clause construction award. The Nijjar defendants argued that the "Arbitrator . . . lacked jurisdiction to issue a 'clause construction award,' and clearly exceeded her power in doing so, because the parties had already submitted [the issue of class arbitrability to] the Court to decide and were bound by the Court's ruling." The Nijjar defendants further argued that they "did not agree to arbitrate the issue of whether the parties' agreement provided for class or representative action, either under the AAA's Supplementary Rules for Class Arbitration or otherwise," and that the parties did not agree to arbitrate claims on a class basis. Judge opposed the petition to vacate the arbitrator's clause construction award and sought to confirm it.

On April 2, 2013 the trial court granted the Nijjar defendants' petition to vacate the clause construction award. The court ruled: "The Arbitrator exceeded her powers by deciding the issue of whether the parties agreed to arbitrate class or representative claims. The parties submitted the issue *to the Court* for determination. Defendants petitioned the Court to compel arbitration of Plaintiff's claims against them on 'an individual and not a class-wide basis,' pursuant to *Stolt-Nielsen . . . .* [Citation.] In opposition to the petition, Plaintiff argued that if the Court ordered arbitration, 'it must order arbitration of all Plaintiff's claims, including the PAGA claims and the class action claims.' [Citation.] The Court ruled on the issue of class and representative arbitration by granting the petitions to compel arbitration (in BC478836 [the class action] and BC460592 [the individual/PAGA action]) only as to *Plaintiff's individual claims*. The Court had the authority to address the issue because the parties expressly and specifically submitted the matter for determination *by the Court*. [¶] . . . [¶]

"Once the Court ruled on the issue of class and representative arbitration, the Arbitrator lost authority, even under the AAA rules, to decide the issue. As discussed above, the parties submitted the issue of class and representative arbitration to the Court for determination and the Court ruled on the issue by granting Defendants' petitions to

8

compel arbitration of Plaintiff's individual claims.  The AAA Rules, on which Plaintiff relies, require that the Arbitrator follow the Court's ruling.  See AAA Supplementary rule 1(c) ('Whenever a court has, by order, addressed and resolved any matter that would otherwise be decided by an arbitrator under these Supplementary Rules, the arbitrator shall follow the order of the court.')  [Citation.]  By issuing the Clause Construction Award and finding the arbitration agreement 'expressly authorizes class/representative arbitration,' the Arbitrator violated AAA Supplemental Rule 1(c) and exceeded her authority.

"Plaintiff argues it is 'clear from the Court's comments at the hearing on the Petition to Compel Arbitration that she was *not* ruling that Plaintiff could not assert before the arbitrator that Plaintiff's class and PAGA claims should be arbitrated.'  Instead, 'the trial court specifically ruled that Plaintiff could raise such issues before the Arbitrator.'  [Citation & footnote.]  However, Plaintiffs characterization of the Court's comments at the hearing is incorrect.  The Court merely advised the parties that it could not stand in the way of any arguments they wished to make to the Arbitrator about the arbitrability of class or representative arbitration."  The trial court further noted that,"[t]o the extent there was any ambiguity regarding the Court's decision, the Arbitrator should have sought clarification."  Judge filed a timely notice of appeal.

## DISCUSSION

Judge asks this court to reverse the trial court's order vacating the clause construction award and to direct the trial court to enter an order confirming the clause construction award.  Judge argues that the arbitrator did not exceed her authority in making the clause construction award because the arbitration agreement specifically authorized the arbitrator to decide all issues and because defendants submitted the individual/PAGA action and the class action to the AAA.  Judge also argues that the trial court did not have the authority to second-guess the arbitrator's decision that the arbitration agreement allows Judge to arbitrate her class and PAGA claims.  We do not

9

resolve these issues at this time because we conclude that the order from which Judge purports to appeal is not appealable.

### A.    *Appealability*

A reviewing court's jurisdiction over a direct appeal depends on the existence of an appealable judgment or order.  (*Otay River Constructors v. San Diego Expressway* (2008) 158 Cal.App.4th 796, 801.)  "A judgment is defined as 'the final determination of the rights of the parties in an action or proceeding' (§ 577) and it is the substance and effect of an adjudication that is determinative, not the form of the decree.  [Citation.]  As a general test, an order constitutes the final determination of a case 'where no issue is left for future consideration except the fact of compliance or noncompliance with the terms of the first decree.'"  [Citation.]  (*Ibid*.)

Where, as here, it is doubtful that the trial court has entered an appealable judgment or order, we must raise and address the issue of appealability.  (*Jennings v. Marralle* (1994) 8 Cal.4th 121, 126; see *Olson v. Cory* (1983) 35 Cal.3d 390, 398 ["since the question of appealability goes to our jurisdiction, we are dutybound to consider it on our own motion"]; *City of Gardena v. Rikuo Corp.* (2011) 192 Cal.App.4th 595, 599, fn. 3 [same]; see also *People v. Elder* (2014) 227 Cal.App.4th 1308, 1319 ["[u]nder the celebrated jurisdictional truism, an appellate court *always* has jurisdiction to determine its appellate jurisdiction"].)[7]

Under both federal and state law, the right to appeal is strictly statutory.  (See *Arthur Andersen LLP v. Carlisle* (2009) 556 U.S. 624, 633 [129 S.Ct. 1896, 173 L.Ed.2d 832] ["[t]he right of appeal is 'a creature of statute'"]; *Dana Point Safe Harbor Collective v. Superior Court* (2010) 51 Cal.4th 1, 5 ["[t]he right to appeal is wholly statutory"]; *Apex LLC v. Korusfood.com* (2013) 222 Cal.App.4th 1010, 1014 ["[t]he  right to appeal

---

[7]    We asked the parties to file letter briefs addressing, among other issues, the appealability of the order vacating the clause construction award and to be prepared to address the issue at oral argument.  Both sides filed letter briefs.

10

is conferred by statute"]; *Doe v. United States Swimming, Inc.* (2011) 200 Cal.App.4th 1424, 1432 ["'[a] trial court's order is appealable when it is made so by statute'"].) Therefore "'"[n]o appeal can be taken except from an appealable order or judgment, as defined in the statutes and developed by the case law . . . ."'" (*City of Gardena v. Rikuo Corp.*, *supra*, 192 Cal.App.4th at p. 601, italics omitted.)

### B.  *The FAA Does Not Preempt California Procedural Law*

Before we can resolve the issue whether the trial court's order expressly vacating the clause construction award (and impliedly denying Judge's motion to confirm the clause construction award) is appealable, we must determine which law applies to this issue.  The trial court found that the FAA applied to the parties' arbitration agreement. That, however, is not the end of the inquiry.  Even assuming the substantive provisions of the FAA apply to the parties' arbitration agreement, the procedural law of California governs the issue whether the trial court's order vacating the clause construction award is appealable.

Section 2 of the FAA is a substantive rule that applies in both federal and state courts.[8]  (*Vaden v. Discover Bank* (2009) 556 U.S. 49, 59 [129 S.Ct. 1262, 173 L.Ed.2d 206]; *Southland Corp. v. Keating* (1984) 465 U.S. 1, 16 [104 S.Ct. 852, 79 L.Ed.2d 1].) It reflects Congress' intent "to foreclose state legislative attempts to undercut the enforceability of arbitration agreements." (*Southland Corp.*, *supra*, at p. 16, fn. omitted.) "The FAA was designed 'to overrule the judiciary's longstanding refusal to enforce agreements to arbitrate,' [citation] and to place such agreements '"upon the same footing

---

[8]     Section 2 of the FAA provides:  "A written provision in any maritime transaction or a contract evidencing a transaction involving commerce to settle by arbitration a controversy thereafter arising out of such contract or transaction, or the refusal to perform the whole or any part thereof, or an agreement in writing to submit to arbitration an existing controversy arising out of such a contract, transaction, or refusal, shall be valid, irrevocable, and enforceable, save upon such grounds as exist at law or in equity for the revocation of any contract."  (9 U.S.C. § 2.)

11

as other contracts[.]"'" [Citation.]" (*Volt Info. Sciences v. Leland Stanford Jr. U.* (1989) 489 U.S. 468, 478 [109 S.Ct. 1248, 103 L.Ed.2d 488]; see *Granite Rock Co. v. International Brotherhood of Teamsters* (2010) 561 U.S. 287, 303 [130 S.Ct. 2847, 177 L.Ed.2d 567].) Therefore, the effect of section 2 of the FAA "'is to create a body of federal substantive law of arbitrability, applicable to any arbitration agreement within the coverage of the Act.'" (*Perry v. Thomas* (1987) 482 U.S. 483, 489 [107 S.Ct. 2520, 96 L.Ed.2d 426]; see *Southland Corp.*, *supra*, at p. 10 ["[i]n enacting § 2 of the [FAA], Congress declared a national policy favoring arbitration and withdrew the power of the states to require a judicial forum for the resolution of claims which the contracting parties agreed to resolve by arbitration"].)

"The FAA contains no express pre-emptive provision, nor does it reflect a congressional intent to occupy the entire field of arbitration." (*Volt Info. Sciences v. Leland Stanford Jr. U.*, *supra*, 489 U.S. at p. 477.) In addition, "[t]here is no federal policy favoring arbitration under a certain set of procedural rules; the federal policy is simply to ensure the enforceability, according to their terms, of private agreements to arbitrate." (*Id.* at p. 476.) Therefore, while "[t]he FAA's substantive provisions are applicable in state as well as federal court, . . . the FAA's procedural provisions apply only to proceedings in federal court." (*Swissmex-Rapid S.A. de C.V. v. SP Systems, LLC* (2012) 212 Cal.App.4th 539, 544].)

In federal court, appeals in arbitration matters under the FAA are governed by section 16 of title 9 of the United States Code (section 16 of the FAA), which lists the types of orders, including interlocutory orders, from which an appeal may be taken under the FAA.[9] In California, appeals in arbitration matters are governed by section 1294,

---

[9] Section 16 of the FAA provides:
"(a) An appeal may be taken from—
"(1) an order—
"(A) refusing a stay of any action under section 3 of this title . . . ,
"(B) denying a petition under section 4 of this title . . . to order arbitration to proceed,

12

which specifies the types of orders from which an appeal may be taken under the CAA.[10] There are differences between the two provisions. For example, Section 16 of the FAA states that certain interlocutory orders are appealable; section 1294 does not.

"[I]f a contract involves interstate commerce, the FAA's *substantive* provision . . . applies to the arbitration. But the FAA's *procedural* provisions . . . do not apply unless the contract contains a choice-of-law clause expressly incorporating them." (*Valencia v. Smyth* (2010) 185 Cal.App.4th 153, 173-174; see *Mave Enterprises , Inc. v. Travelers Indemnity Co.* (2013) 219 Cal.App.4th 1408, 1429 ["the procedural provisions of the CAA" apply in California courts "absent a choice-of-law provision expressly mandating the application of the procedural law of another jurisdiction"].) The arbitration agreement in this case does not mention the FAA or the CAA, and it does not include a choice of law provision. There is no indication that the parties intended to apply the procedural provisions of the FAA to the exclusion of those of the CAA. Under these circumstances, appealability is determined by state procedural law. (See *Cronus Investments, Inc. v. Concierge Services* (2005) 35 Cal.4th 376, 389 ["the United States

---

"(C) denying an application under section 206 of this title . . . to compel arbitration,
    "(D) confirming or denying confirmation of an award or partial award, or
    "(E) modifying, correcting, or vacating an award;
    "(2) an interlocutory order granting, continuing, or modifying an injunction against an arbitration that is subject to this title; or
    "(3) a final decision with respect to an arbitration that is subject to this title.
  "(b) Except as otherwise provided in section 1292(b) of title 28, an appeal may not be taken from an interlocutory order—
    "(1) granting a stay of any action under section 3 of this title . . . ;
    "(2) directing arbitration to proceed under section 4 of this title . . . ;
    "(3) compelling arbitration under section 206 of this title . . . ; or
    "(4) refusing to enjoin an arbitration that is subject to this title."

[10]    Section 1294 provides: "An aggrieved party may appeal from: [¶] (a) An order dismissing or denying a petition to compel arbitration. [¶] (b) An order dismissing a petition to confirm, correct or vacate an award. [¶] (c) An order vacating an award unless a rehearing in arbitration is ordered. [¶] (d) A judgment entered pursuant to this title. [¶] (e) A special order after final judgment."

Supreme Court does not read the FAA's procedural provisions to apply to state court proceedings"]; see, e.g., *Southland Corp. v. Keating*, *supra*, 465 U.S. at p. 16, fn. 10 [section 4 of the FAA does not apply to state courts]; *Cable Connection, Inc. v. DIRECTV, Inc.* (2008) 44 Cal.4th 1334, 1351 ["[s]ections 3 and 4 of the FAA, governing stays of litigation and petitions to enforce arbitration agreements, do not apply in state court"]; *Swissmex-Rapid S.A. de C.V. v. SP Systems, LLC*, *supra*, 212 Cal.App.4th at p. 541 [section 9 of the FAA is procedural and thus does not apply in state court proceedings].)[11]

Absent an agreement by the parties to apply the procedural provisions of the FAA to their arbitration, federal procedural rules apply only where state procedural rules conflict with or defeat the rights Congress granted in the FAA. (See *Rosenthal v. Great Western Fin. Securities Corp.* (1996) 14 Cal.4th 394, 409 [the FAA's procedural provisions are not binding on state courts as long as the state's procedures do not defeat

---

[11] Courts in other jurisdictions have similarly concluded that the procedural provisions of the FAA do not apply in state court. (See, e.g., *Southern California Edison Co. v. Peabody Western Coal* (Ariz. 1999) 977 P.2d 769, 773-774 ["[t]he FAA does not . . . require submission to federal procedural law," and "[e]ach state is free to apply its own procedural requirements so long as those procedures do not defeat the purposes of the act"]; *Simmons Co. v. Deutsche Financial Services* (Ga.Ct.App. 2000) 532 S.E.2d 436, 440 [state rule permitting immediate appeal from an order compelling arbitration not preempted by section 16 of the FAA because allowing such an appeal did not defeat the purposes or objective of the FAA]; *Collins v. Prudential Ins. Co. of America* (La. 2000) 752 So.2d 825, 828-829 ["the provisions of § 16 of the FAA governing the timing of appeals are procedural in nature and that states are free to follow their own procedural rules regarding appeals, unless those rules undermine the goals and principles of the FAA"]; *Wells v. Chevy Chase Bank* (Md. 2001) 768 A.2d 620, 629 ["the Maryland procedural rule, recognizing an order compelling arbitration to be a final and appealable judgment, is not preempted by the FAA"]; *Weston Securities Corp. v. Aykanian* (Mass.App.Ct. 1998) 703 N.E.2d 1185, 1189 [section 16 of the FAA did not preempt a state statute prohibiting appeal of order compelling arbitration]; *Kremer v. Rural Community Ins. Co.* (Neb. 2010) 788 N.W.2d 538, 547 [section 16(b) of the FAA does not preempt Nebraska's appellate procedural rules]; *Toler's Cove Homeowners v. Trident Constr.* (S.C. 2003) 586 S.E.2d 581, 584-585 [state procedural rule, rather that FAA rule, governs whether order compelling arbitration is immediately appealable].)

the rights granted by Congress]; *Muao v. Grosvenor Properties, Ltd.* (2002) 99 Cal.App.4th 1085, 1092 ["'[l]ike other federal procedural rules,' section 16 of the FAA is not binding on our state court proceedings, "'*provided applicable state procedures do not defeat the rights granted by Congress*'"'"].) Here, there is no conflict between section 1294 and the policy underlying the FAA of enforcing arbitration agreements. Therefore, California procedural law governs the question whether the order vacating the clause construction award is appealable.

   C.  *The Order Vacating the Clause Construction Award Is Not Appealable*

  As noted, section 1294 governs appealability of orders in arbitration matters in California. *(Vivid Video, Inc. v. Playboy Entertainment Group, Inc.* (2007) 147 Cal.App.4th 434, 442.) Subdivision (c) of section 1294 makes appealable "[a]n order vacating an award unless a rehearing in arbitration is ordered." (See *SWAB Financial, LLC v. E\*Trade Securities, LLC* (2007) 150 Cal.App.4th 1181, 1195 [order vacating arbitration award without ordering a rehearing is appealable ]; *Marcus & Millichap Real Estate Investment Brokerage Co. v. Woodman Investment Group* (2005) 129 Cal.App.4th 508, 515 ["while an order vacating an arbitration award and ordering rehearing is an 'intermediate ruling,' a similar order vacating an award without ordering rehearing is, of necessity, 'final'"].) Because the trial court vacated the clause construction award and did not order a rehearing, the order at first blush appears appealable under section 1294, subdivision (c). The issue, however, is whether the trial court's order in this case vacated an arbitration "award."

  In *Rubin v. Western Mutual Ins. Co.* (1999) 71 Cal.App.4th 1539, the court held that an order confirming an arbitration award under section 1287.4 is not appealable where merits of the claims remain to be resolved in the arbitration. (*Id.* at pp. 1547-1548.) The court relied on the language of section 1287.4, which provides that, "[i]f an award is confirmed, judgment shall be entered in conformity therewith," and the "judgment so entered . . . is subject to all the provisions of law relating[] to a judgment in a civil action . . . ." (*Id.* at p. 1547, italics omitted.) The court held that "[t]he express

language of section 1287.4 requires that a judgment imposed after confirmation of an arbitration award be treated as one in an ordinary civil action; as a result, the finality requirement before an appeal may proceed is applicable . . . ." (*Ibid.*)  The court noted that "our holding is limited to the appealability of a judgment imposed pursuant to section 1287.4 confirming an arbitration award where the resolution of the merits of the complaint remain unresolved.  Other orders listed in section 1294 do not contain the restrictive language in section 1287.4. . . .  We need not address under what circumstances, if ever, the section 904.1, subdivision (a) finality requirement applies to the other orders identified in section 1294. . . ." (*Id.* at p. 1548, fn. omitted.)  This appeal raises the issue, left unresolved in *Rubin*, whether the finality requirement applies to the orders listed in section 1294, including an order vacating a non-final arbitration award under section 1294, subdivision (c).

Section 1283.4 provides that an arbitration award must "include a determination of all the questions submitted to the arbitrators the decision of which is necessary in order to determine the controversy."  The clause construction award in this case does not determine all of the questions that are necessary for the arbitrator to decide in order to determine the controversy.  Rather, the clause construction award only resolved what the arbitrator described as the "threshold matter" of "whether the applicable arbitration clause permits the arbitration to proceed on behalf of or against a class," and allowed the class claims to continue.  Because the clause construction award does not qualify as an "award" under section 1283.4, the trial court's order is not an order vacating an arbitration award, and it is not appealable.[12]  (See *Otay River Constructors v. San Diego*

---

[12]     Because the order vacating the clause construction award is not appealable, the resolution of whether the trial court had jurisdiction to vacate a less than final arbitration award in the first instance must await future determination.  It is highly unlikely, however, that the trial court had jurisdiction to rule on the Nijjar defendants' petition, which sought to vacate a less than final ruling made by the arbitrator.  (See *Cinel v. Christopher* (2012) 203 Cal.App.4th 759, 767 ["[b]efore confirming an award, the trial court has a duty, in order to follow the dictates of section 1283.4, to ensure that the arbitrator's 'award' is an 'award' within the meaning of that statute"].)  It does not seem

16

*Expressway*, *supra*, 158 Cal.App.4th at p. 803 ["[u]nder section 1294, appealable arbitration orders also require finality and this requirement is consistent with the language of section 1294 and the general prohibition of appeals from interlocutory nonfinal judgments in section 904.1, subdivision (a)"], citing *Vivid Video, Inc. v. Playboy Entertainment Group, Inc.*, *supra*, 147 Cal.App.4th at p. 442; see also *Kurwa v. Kislinger* (2013) 57 Cal.4th 1097, 1100 ["a judgment that fails to dispose of all the causes of action pending between the parties is generally not appealable"].)[13]

There are good reasons for applying a finality requirement to orders listed in section 1294. Without such a requirement, a wide variety of orders vacating (or dismissing petitions to vacate) interim arbitration awards would be appealable, which would interfere with the "'efficient, streamlined procedure[]'" that is supposed to be arbitration's "fundamental attribute." (*Sonic-Calabasas A, Inc. v. Moreno* (2013) 57 Cal.4th 1109, 1140; see *Rosenson v. Greenberg Glusker Fields Claman & Machtinger LLP* (2012) 203 Cal.App.4th 688, 694 ["[t]he purpose of arbitration is to provide a quick and efficient form of alternate dispute resolution"].) Aggrieved parties could appeal

---

right that the trial court would have jurisdiction to vacate an interim award and this court would not have jurisdiction to review the trial court's ruling. Nothing in this opinion should be construed as precluding Judge from filing in the trial court a motion for reconsideration of the order vacating the interim clause construction award, at least in the individual/PAGA action, which is the only case in which the trial court vacated the interim award.

[13] Unlike an order dismissing class claims, which is appealable under the death knell doctrine, the clause construction award allows class claims to proceed. (See *In re Baycol Cases I & II* (2011) 51 Cal.4th 751, 757-758 ["orders that only limit the scope of a class or the number of claims available to it are not similarly tantamount to dismissal and do not qualify for immediate appeal under the death knell doctrine; only an order that entirely terminates class claims is appealable"]; *Green v. Obledo* (1981) 29 Cal.3d 126, 149, fn. 18 [class action interim orders are not appealable unless "'tantamount to a dismissal of the action as to all members of the class'"]; *General Motors Corp. v. Superior Court* (1988) 199 Cal.App.3d 247, 250, 251 ["intermediate order" certifying a smaller class than requested did "not have what has come to be known as the 'death knell' effect" and was not appealable].)

17

orders vacating interim arbitration awards resolving discovery disputes, sustaining or overruling demurrers, granting summary adjudication on certain claims, ruling on liability but not damages in a bifurcated proceeding, and denying motions for a new arbitration hearing. It would be anomalous to allow parties participating in an arbitration to appeal orders vacating interim arbitration awards when the underlying orders are not appealable in non-arbitration cases. (See *Regents of University of California v. Superior Court* (2013) 220 Cal.App.4th 549, 557 ["[a]n order overruling a demurrer is not directly appealable"]; *Angelica Textile Services, Inc. v. Park* (2013) 220 Cal.App.4th 495, 503 ["[g]enerally, orders granting summary adjudication are interlocutory orders and, as such, are not appealable"]; *Chakalis v. Elevator Solutions, Inc.* (2012) 205 Cal.App.4th 1557, 1568, fn. 4 ["[a]n order denying a motion for a new trial is not directly appealable"]; *NewLife Sciences, LLC v. Weinstock* (2011) 197 Cal.App.4th 676, 689 [discovery orders are generally not appealable]; *Arce v. Kaiser Foundation Health Plan, Inc.* (2010) 181 Cal.App.4th 471, 485, fn. 9 ["an order sustaining a demurrer without leave to amend is ordinarily not appealable"]; see also *Plaza Tulare v. Tradewell Stores, Inc.* (1989) 207 Cal.App.3d 522, 523-524 [order in bifurcated trial on interpretation of contract not appealable where issue of damages had not yet been litigated]; *Lauderdale v. U & I Equipment Co.* (1969) 271 Cal.App.2d 140, 142-143 [judgment on verdict against defendant on issue of liability only is not a final judgment and thus is not appealable]; Knight et al., Cal. Practice Guide: Alternative Dispute Resolution (The Rutter Group 2013) ¶ 5:422.5, p. 5-290 [when issues of liability and damages have been bifurcated in arbitration, the arbitrator's decision or order issued at the conclusion of the liability phase "is not an 'award'" within the meaning of sections 1283.4 or 1284 and thus "cannot be confirmed, corrected or vacated by" the trial court].)

*Hightower v. Superior Court* (2001) 86 Cal.App.4th 1415 is not to the contrary. In *Hightower* the arbitrator issued an award, after "an extensive evidentiary hearing" over 38 days on the merits of the dispute, entitled a "'[p]artial final award'" that the court stated "would be subject to confirmation." (*Id.* at pp. 1423, 1439.) The court stated that "an arbitrator, in order to provide a proper remedy for the prevailing party, may resolve

18

certain critical areas of a dispute in a '*partial* final award' but reserve jurisdiction to later decide, by a '*final* award,' issues which will likely arise as a result of the implementation of that remedy." (*Id*. at p. 1419.) The arbitrator's award in *Hightower*, however, did not leave any "undecided issues 'necessary in order to determine the controversy,'" but instead "determined all issues that [were] necessary to the resolution of the essential dispute" in the case. (*Id.* at p. 1439.) The arbitrator did reserve jurisdiction to decide " a number of potential and conditional issues that the arbitrator will have to address" regarding the appropriate form of the final remedy, but the award resolved the dispute between the parties. (*Id.* at pp. 1440-1441.)[14] In contrast, the clause construction award here dealt only with the issue of whether the parties could arbitrate the class claims. The award did not resolve any of the issues necessary to the resolution of the dispute between the parties, nor did the award merely reserve potential or conditional issues relating to implementation of a remedy. More important, the *Hightower* court stated that the award would be reviewable not by appeal, but "by application for an extraordinary writ" based on "a demonstration as to why an appeal from the judgment confirming the ultimate final award would not be adequate." (*Id.* at p. 1440.) Thus, the holding and result in *Hightower* are entirely consistent with our decision in this case.

---

[14] The dispute in *Hightower* was between two 50 percent shareholders of a corporation, each of whom had the right to offer to sell his shares to the other at a specified price pursuant to a buy-sell agreement. If one of the shareholders exercised the right, then the other shareholder could either buy the shares or sell his shares to the other at the same price. (*Hightower v. Superior Court*, *supra*, 86 Cal.App.4th at p. 1421.) One of the shareholders eventually exercised this right, and the other shareholder filed a demand for arbitration, claiming that the offering shareholder interfered with his ability to obtain financing to purchase the shares. (*Id.* at pp. 1422-1423.) The arbitrator ruled in favor of the offering shareholder. The problem was the remedy. The offering shareholder had the financing to purchase the other shareholder's shares at the time he made the offer three years earlier, but it was uncertain whether he could obtain it again at the time of the award. So the arbitrator gave the offering shareholder "the right, but not the obligation," to exercise his option, subject to 10 specified conditions. (*Id.* at p. 1426 & fn. 15.) The arbitrator reserved jurisdiction to determine these "potential and conditional issues" that were likely to arise in connection with the exercise of the option and the various conditions. (*Id.* at p. 1439.)

D. *The Parties' Arbitration Agreement Does Not Confer Jurisdiction*

The parties' arbitration agreement provides that, "[u]pon receipt of a notice of intent to initiate arbitration from employee or upon service of its own notice of intent to arbitrate upon an employee, Atlas Resources, Inc. will contact the [AAA] and request a panel of arbitrators." The parties thus agreed that the AAA rules would govern their arbitration. (See *Swissmex-Rapid S.A. de C.V. v. SP Systems, LLC*, *supra*, 212 Cal.App.4th at pp. 541-542 ["[b]y providing for AAA arbitration, the parties are deemed to have made the AAA rules a part of their agreement"].)

AAA's Supplemental Rule 3 (see fn. 6 *ante*) sets forth a bifurcated procedure in which the arbitrator first issues a partial final award, i.e., a clause construction award, that determines whether the arbitration clause permits arbitration on a class wide basis. Once the arbitrator issues the clause construction award the arbitrator stays the proceedings for a specified time to enable any party to ask the trial court to confirm or vacate the partial award. If a party files a petition seeking such an order, the arbitrator may stay some or all of the proceedings until the trial court rules. Otherwise, the arbitration proceeds. Here, the arbitrator incorporated this procedure into her scheduling order, stating that she intended to issue a clause construction award on the threshold issue of arbitrability of class claims, give the parties an opportunity to seek review of the interim award, and then hold an evidentiary hearing on the merits of the parties' claims.

It is true, as the Nijjar defendants point out in their supplemental letter brief, that the arbitrator's decision to employ a bifurcated procedure was consistent with Rule 3 of AAA's Supplementary Rules for Class Arbitrations. Whether an order by the trial court is appealable, however, is determined by statutes enacted by the Legislature, not rules adopted by the AAA. (See *In re S.B.* (2009) 46 Cal.4th 529, 534 ["'one appeals from a judgment or from an order that the Legislature has designated as appealable'"].) Therefore, although the bifurcated procedure of AAA Supplemental Rule 3 may apply to the parties' arbitration, neither the AAA nor the parties by agreement can create a right to appeal that does not otherwise exist. The parties cannot confer jurisdiction on an appellate court by consent or stipulation. (See *City of Gardena v. Rikuo Corp.*, *supra*,

20

192 Cal.App.4th at p. 604 ["parties cannot confer jurisdiction upon an appellate court by agreement when it otherwise does not exist"]; *Branner v. Regents of University of California* (2009) 175 Cal.App.4th 1043, 1049 [jurisdiction cannot "'be conferred upon the appellate court by the consent or stipulation of the parties, estoppel, or waiver'"]; *In re Marriage of Corona* (2009) 172 Cal.App.4th 1205, 1216 [same].)

      E.      *The Nijjar Defendants' Reliance on Cable Connection Is Misplaced*

      The Nijjar defendants cite *Cable Connection, Inc. v. DirectTV, Inc.*, *supra*, 44 Cal.4th 1334 (*Cable Connection*) in support of their somewhat surprising argument that the order vacating the clause construction award is appealable.[15]  Like this case, *Cable Connection* involved an appeal from an order vacating an arbitration award that concluded that an arbitration provision allowed for class arbitration.  The Nijjar defendants assert that, because in *Cable Connection* the Court of Appeal heard the appeal and the Supreme Court granted review, both courts impliedly found that the order was appealable.  A case, however, "is authority only for an issue actually considered and decided." (*Moreno v. Quemuel* (2013) 219 Cal.App.4th 914, 918, citing *In re Chavez* (2003) 30 Cal.4th 643, 656; see *Lefebvre v. Lefebvre* (2011) 199 Cal.App.4th 696, 704.) The Supreme Court in *Cable Connection* stated that it was considering "two questions regarding arbitration agreements.  (1) May the parties structure their agreement to allow for judicial review of legal error in the arbitration award?  (2) Is classwide arbitration available under an agreement that is silent on the matter?" (*Cable Connection*, *supra*, at p. 1339.)  The Supreme Court did not consider or decide the appealability issue in this case.  In any event, the most applicable portions of the *Cable Connection* decision are the statements in Justice Baxter's concurring opinion that "parties proceeding under the

---

[15]    The Nijjar defendants' position on this issue is surprising because they prevailed in the trial court and are the respondents on appeal.  If the trial court's order vacating the clause construction award is not appealable, then Judge's appeal of that order will not succeed, at least for now.

21

California Arbitration Act may obtain confirmation, correction, or vacation only of an arbitral decision that constitutes an 'award' within the act's contemplation," and that "it is questionable whether parties to an arbitration agreement may contract to obtain premature judicial merit review of arbitral decisions that are labeled as 'awards,' but which in substance merely resolve one or more legal or factual issues pertaining to only a portion of the controversy submitted to the arbitrators for their determination." (*Id.* at pp. 1366-1367 (conc. opn. of Baxter, J.).)

## DISPOSITION

The order vacating the clause construction award is not a final arbitration award appealable within the meaning of section 1294, subdivision (c), and therefore is not appealable.[16] The appeal from the order vacating the clause construction award in the individual/PAGA action, case No. BC460592, is dismissed. The parties are to bear their own costs on appeal.

SEGAL, J.[*]

We concur:

PERLUSS, P. J.                           ZELON, J.

---

[16] Because the Nijjar defendants did not move to vacate the clause construction award in the class action, that interim award remains in effect in the arbitration.

[*] Judge of the Los Angeles Superior Court, assigned by the Chief Justice pursuant to article VI, section 6 of the California Constitution.

22