Filed 7/2/20

# CERTIFIED FOR PARTIAL PUBLICATION*

## IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

## SECOND APPELLATE DISTRICT

## DIVISION TWO

| | |
|---|---|
| STEWART LONKY et al., | B295314 (consolidated with B297632) |
| Plaintiffs and Appellants, | |
| v. | (Los Angeles County Super. Ct. No. BC564427) |
| PARYUS PATEL, | |
| Defendant and Appellant. | |

APPEAL from a judgment and post-judgment order of the Superior Court of Los Angeles County, Samantha Jessner and Yolanda Orozco, Judges.  Judgment reversed with directions, and post-judgment order affirmed.

Roxborough, Pomerance, Nye & Adreani, Drew E. Pomerance and Joseph C. Gjonola, for Plaintiffs and Appellants.

The Annigian Firm, Jason D. Annigian, James T. Ryan, P.C., James T. Ryan, for Defendant and Appellant.

---

* Pursuant to California Rules of Court, rules 8.1100 and 8.1110, this opinion is certified for publication with the exception of part II of the Discussion.

* * * * * *

An arbitrator's power to modify any of her rulings is severely curtailed if that ruling constitutes an "award" within the meaning of Code of Civil Procedure section 1283.4.[1]  Where, as here, an arbitrator issues a series of rulings during an arbitration proceeding, how does a court determine which of those rulings constitutes an "award"?  We hold that a court does so (1) by asking whether the ruling (a) determines all issues necessary to resolve the entire controversy and (b) leaves unaddressed only those issues incapable of resolution at that time because those issues are potential, conditional or contingent, and (2) answers those questions by looking to the specific procedures adopted in the arbitration at issue.  Because the parties in this case trifurcated the arbitration proceedings and because the arbitrator's second of three rulings did not determine all issues necessary to the controversy and left unaddressed issues that could have been addressed at that time, the arbitrator acted within her authority in modifying that second ruling prior to issuing her third and final ruling that constituted an "award."  Consequently, the trial court erred in refusing to confirm that award on the ground that the arbitrator had exceeded her powers in incorporating a modification of the second ruling into the award.  We therefore vacate the judgment with instructions to enter a new and different judgment in accordance with the award.  We reject the parties' further attorney fees-based challenges, but award attorney fees on appeal to the prevailing party on appeal.

---

[1]	All further statutory references are to the Code of Civil Procedure unless otherwise indicated.

2

# FACTS AND PROCEDURAL BACKGROUND

## I.    Facts

### A.    *Underlying conduct*

Dr. Stewart Lonky (Lonky) is a cardiologist who obtained his medical license in 1973 and started a practice called Medical Associates of Westchester (MAW) in 1988.  In 1996 Dr. Paryus Patel (Patel) joined Lonky's practice as a 50/50 partner.  Lonky and Patel signed a written Agreement of Partnership (the agreement) memorializing the arrangement.

Between 2009 and 2014, Patel stole money from Lonky and MAW by secretly intercepting reimbursement checks sent to MAW in the mail and depositing them in his own account(s).  To facilitate this fraud, Patel also forged Lonky's signature on bank documents.  During this period, the total amount of diverted checks came to $558,266.

### B.    *Litigation and arbitration*

#### 1.    *Litigation*

On November 19, 2014, Lonky and MAW (collectively, plaintiffs) sued Patel.  In accordance with the arbitration clause in the agreement, the parties stipulated in April 2015 to stay the lawsuit and proceed by way of arbitration.

In their operative pleading, plaintiffs alleged claims against Patel for (1) conversion and embezzlement, (2) breach of fiduciary duty, (3) breach of contract, and (4) dissolution of the medical practice.  Patel cross-claimed against Lonky, MAW and Lonky's wife (who was MAW's office manager) for (1) breach of the agreement, (2) breach of the duty of loyalty, (3) breach of the duty of care, (4) concealment, (5) an accounting, (6) declaratory

3

relief, (7) dissolution of the medical practice, (8) conspiracy to commit fraud, (9) conversion, and (10) constructive trust.[2]

### 2. *Arbitration*

Although the arbitrator's two scheduling orders initially proposed to break the arbitration proceeding into two phases, the parties ultimately agreed to break the proceedings into three phases: (1) a first phase where the arbitrator would decide issues of liability, the amount of compensatory damages and eligibility for punitive damages, (2) a second phase where she would decide the amount of punitive damages and entitlement to attorney fees and costs, and (3) a final phase where she would decide the amount of attorney fees and costs. In accordance with the agreement, the arbitration was to be "conducted pursuant to the California Arbitration Act."

#### a. Phase One

##### i. Hearing

The arbitrator held five days of evidentiary hearings in early May 2017.

##### ii. First Interim Ruling

On August 14, 2017, the arbitrator served a 33-page written award entitled "Interim Award" (First Interim Ruling).

The arbitrator sustained all of plaintiffs' claims against Patel. The arbitrator found that Patel had stolen $558,266 in checks from MAW. Patel's "theft of checks," the arbitrator ruled, constituted conversion and embezzlement, a breach of fiduciary duty and a breach of the agreement. Because Patel had "concealed" this theft, the arbitrator continued, the delayed discovery rule applied and plaintiffs could recover the full

---

[2] Patel also brought a claim for defamation, but voluntarily dismissed it early on.

4

amount of diverted money they proved up—that is, all $558,266 substantiated by the bank records from 2009 forward.[3] The arbitrator also awarded plaintiffs prejudgment interest on one-half of that amount, and ordered the partnership dissolved. Aside from a $91,811.50 set off that plaintiffs conceded was appropriate because Wells Fargo drew upon one of Patel's accounts to fund a line of credit for MAW, the arbitrator rejected each and every one of Patel's cross-claims.

The arbitrator also found that the "facts constituting the breach of fiduciary duty allow for a consideration of punitive damages" because Patel's conduct in methodically stealing from his long-time partner was "intentional and can fairly be . . . described as bad faith, fraudulent, malicious, oppressive and outrageous."

In its final section, the First Interim Ruling specified (1) the amounts awarded for compensatory damages and prejudgment interest as well as the offset, (2) that "Patel shall pay Lonky" "punitive damages," but left the amount blank and noted that the "[a]mount" was "to be determined in a Phase II hearing in this Arbitration," and (3) that plaintiffs are "the prevailing party in this Arbitration," but left blank the amount of attorney fees and costs. The First Interim Ruling concluded with the following language: "[insert in Final Award only] This award resolves all issues submitted for decision in this proceeding[.]"

---

[3]     The arbitrator awarded plaintiffs the *full* amount of stolen checks (rather than one-half the amount to which Lonky was contractually entitled under the parties' 50/50 percentage interests) because awarding plaintiffs only the contractual amount "would effectively mean there is no punishment for [Patel's] theft." This ruling is not challenged on appeal.

5

### iii. Modification of First Interim Ruling

On August 21, 2017, Patel filed an application with the arbitrator to correct the First Interim Ruling. Patel argued that his theft of checks should be viewed as several discrete acts, such that plaintiffs' recovery should be limited pursuant to the continuous accrual doctrine to those checks diverted within the pertinent statute of limitations period. Because the statute of limitations for breach of fiduciary duty and conversion is three years, Patel argued, plaintiffs' compensatory damages should be limited to the checks diverted in the three years immediately prior to the filing of their lawsuit. That amount came to $310,138.62.

On October 13, 2017, the arbitrator granted Patel's motion in a written order. This order was issued and served on the parties 60 days after the First Interim Ruling was served.

### b. Phase Two

#### i. Hearing

The arbitrator held a one-day hearing on October 25, 2017.

#### ii. Second Interim Ruling

On January 16, 2018, the arbitrator issued and served a 40-page written award entitled "Corrected Phase II Interim Award" (Second Interim Ruling).[4]

The Second Interim Ruling largely cut and pasted the analysis from the First Interim Ruling with two notable exceptions. First, the arbitrator awarded plaintiffs compensatory damages for three years' worth of diverted checks in accordance

---

[4] It was designated the "*Corrected* Phase II Interim Award" because this award corrected typos contained in an order issued four days earlier.

with its earlier order modifying the First Interim Ruling. Second, the arbitrator awarded plaintiffs $1 million in punitive damages after finding that Patel's conduct was "sufficiently reprehensible as to warrant the imposition of punitive damages" and that the "totality of the evidence" established that a $1 million punitive damages award was "sufficient to punish Patel and deter further similar behavior."

In its final section, the Second Interim Ruling specified (1) the reduced amounts for compensatory damages and prejudgment interest as well as the offset, (2) the $1 million punitive damages award, and (3) that plaintiffs were the "prevailing party," but left blank the amount of attorney fees and costs. Like the First Interim Ruling, the Second Interim Ruling also concluded with the following language: "[insert in Final Award only] This award resolves all issues submitted for decision in this proceeding[.]"

iii. Request to modify Second Interim Ruling

On January 18, 2018, plaintiffs wrote a letter to the arbitrator asking her to correct the Second Interim Ruling. Plaintiffs argued that, if their recovery was to be limited by the continuous accrual doctrine, the pertinent limitations period was *four* years, not *three* years, because Patel's diversion of checks also constituted a breach of contract (for which the statute of limitations is four years). The checks diverted in the four years immediately preceding plaintiffs' lawsuit came to $434,158.25.

As explained next, the arbitrator accepted plaintiffs' argument in its third order. That order was issued and served on April 27, 2018, which is 101 days after the Second Interim Ruling was served.

7

c.    Phase Three

i.    Hearing

The arbitrator conducted a telephonic hearing on March 26, 2018.

ii.    Final Award

On April 27, 2018, the arbitrator issued and served a 12-page written award entitled "Final Award" (Final Award).

Rather than cut and paste the content of the First Interim Ruling and Second Interim Ruling, the Final Award "incorporated" their content "by reference" with one exception. The arbitrator granted plaintiffs' request to correct the Second Interim Ruling and, on that basis, increased the compensatory damages to $434,158.25.  In doing so, the arbitrator rejected Patel's argument that she had the statutory authority to correct the Second Interim Ruling only within 30 days of its issuance, reasoning that this limitation applied only to final awards and that "[t]he prior awards were Interim Awards only and not yet final."

The Final Award also awarded plaintiffs attorney fees and costs.  The arbitrator rejected Patel's attempts to collaterally attack her earlier rulings that plaintiffs were the prevailing party.  The arbitrator went on to find that plaintiffs were accordingly entitled to attorney fees of $690,886.15 and costs of $100,940.11.

In its final section, the Final Award specified that plaintiffs were entitled to (1) $434,158.25 in compensatory damages (corresponding with the four-year limitations period) and prejudgment interest of $122,528.64 as of March 23, 2018, less an offset of $91,881.50, (2) $1 million in punitive damages, and (3) $791,826.26 in attorney fees and costs.  The total came to

8

$2,256,631.65. The Final Award concluded with the following language and without any bracketed, qualifying language: "This award resolves all issues submitted for decision in this proceeding."

## II.    Procedural Background

### A.    *Post-arbitration proceedings to confirm and correct award*

Plaintiffs and Patel filed competing petitions regarding the Final Award. Plaintiffs filed a petition to confirm, while Patel filed a petition to correct on the ground that the arbitrator exceeded her powers by increasing the compensatory damages awarded in the Second Interim Ruling more than 30 days after that award was served.

Following briefing and court-ordered supplemental briefing as well as two hearings, the trial court issued a written order granting Patel's petition to correct and denying plaintiffs' petition to confirm. Specifically, the court ruled that the arbitrator had "exceeded her powers" when she increased the compensatory damages to $434,158.25 in the Final Award because (1) that amount was "in direct contradiction" to the Second Interim Ruling (and thus effectively "corrected" the Second Interim Ruling), (2) an arbitrator only has 30 days to "correct" and "serve" an "award" under section 1284, and (3) the Final Award was issued and served more than 30 days after the Second Interim Ruling. Thus, the court corrected the Final Award to award the compensatory damages amount set forth in the Second Interim Ruling—that is, $310,138.62.

9

On January 18, 2019, the court entered judgment in plaintiffs' favor in the amount of $2,091,560.23.[5]

### B.     *Attorney fees*

Following the entry of judgment, plaintiffs filed a motion for attorney fees and costs incurred in the post-arbitration proceedings in court. Patel filed a competing motion for attorney fees and costs, claiming that *he* had prevailed because he succeeded in getting the court to reduce the judgment amount.

After briefing and a hearing, the trial court issued a 10-page order. The court ruled that, despite Patel's success at reducing the compensatory damages (and, by extension, the prejudgment interest calculation), plaintiffs were still the "prevailing party" because they were "ultimately successful in procuring a large judgment against [Patel]." The court found that most of the attorney fees sought by plaintiffs were reasonable, except for $9,009 in fees it found to be "unreasonabl[y]" incurred. The court ultimately awarded plaintiffs $65,197 in attorney fees and $320 in costs incurred in the post-arbitration judicial proceedings.

### C.     *Appeal and cross-appeal*

Plaintiffs filed a timely appeal from the judgment.

Both plaintiffs and Patel filed timely appeals from the post-judgment order awarding plaintiffs attorney fees and costs.

## DISCUSSION

This appeal and cross-appeal present two issues. The first is whether the trial court erred in granting Patel's petition to correct the Final Award on the ground that the arbitrator

---

5     The judgment also noted that Patel had, on May 24, 2018, already paid $1,956,631.65 in partial satisfaction of the judgment.

10

exceeded her powers in modifying the Second Interim Ruling. The second is whether the trial court properly awarded attorney fees and costs in the post-arbitration judicial proceedings and whether we should award such fees and costs in this appeal.

## I.      Correction of Final Award

Plaintiffs argue that the trial court erred in granting Patel's petition to correct the Final Award and, correspondingly, in denying their petition to confirm that award.  Our review of this issue is de novo because the trial court's ruling turns on its determination that the arbitrator exceeded her powers, on its interpretation of the California Arbitration Act (the Act) (§ 1280 et seq.), and on its application of the Act to undisputed facts. (*Richey v. AutoNation, Inc.* (2015) 60 Cal.4th 909, 918, fn. 1 (*Richey*) ["the question whether the arbitrator exceeded his powers . . . is generally reviewed on appeal de novo"]; *Union of Medical Marijuana Patients, Inc. v. City of San Diego* (2019) 7 Cal.5th 1171, 1183 ["Statutory interpretation is 'an issue of law, which we review de novo.' [Citation.]"]; *Martinez v. Brownco Construction Co.* (2013) 56 Cal.4th 1014, 1018 [where the "issue involves the application of law to undisputed facts, we review the matter de novo"]; cf. *Cooper v. Lavely & Singer Prof. Corp.* (2014) 230 Cal.App.4th 1, 11-12 (*Cooper*) [where the trial court made factual findings based on disputed facts, we review those findings for substantial evidence].)

### A.      *Pertinent law*

Under the Act, a trial court has the authority to "correct" an arbitration "award" in only three statutorily enumerated circumstances.  (§ 1286.6.)  One of those circumstances is when "[t]he arbitrator[] [has] exceeded [her] powers" (assuming, as well, that the "award may be corrected without affecting the

11

merits of the decision"). (*Id.*, subd. (b).) Although an arbitrator does not exceed her powers by issuing an award that "erroneously decid[es] a contested issue of law or fact" (*Advanced Micro Devices, Inc. v. Intel Corp.* (1994) 9 Cal.4th 362, 366 (*Advanced Micro*)), she does exceed her powers by "issuing an award that violates a party's unwaivable statutory rights . . ." (*Richey, supra*, 60 Cal.4th at p. 916; *Kelly Sutherlin McLeod Architecture, Inc. v. Schneickert* (2011) 194 Cal.App.4th 519, 534 ["'An arbitrator exceeds his or her powers if the arbitration award violates a statutory right . . .'"]).

Here, the trial court ruled that the arbitrator exceeded her powers by issuing the Final Award that effectively corrected the Second Interim Ruling, and that this correction violated section 1284 because it did not comply with that statute's time limits for "correct[ing]" an "award." Because section 1284's time limits, by its plain language, apply only to a ruling by an arbitrator that qualifies as an "award" (§ 1284 [detailing when "[t]he arbitrator[] . . . may correct *the award*], italics added), the implicit but necessary premise of the trial court's ruling is that the Second Interim Ruling constitutes an "award."

The question we must answer is: Does it?

As this case highlights, whether an arbitrator's ruling constitutes an "award" is a significant event.

If a ruling constitutes an "award," an arbitrator's power to modify that "award" is limited both substantively and procedurally. Substantively, an arbitrator may only (1) "correct" an "award" if (a) "[t]here was an evident miscalculation of figures or an evident mistake in the description of any person, thing or property referred to in the award" (§§ 1284, 1286.6, subd. (a)), or (b) "[t]he award is imperfect in a matter of form, not affecting the

12

merits of the controversy" (§§ 1284, 1286.6, subd. (c)); or (2) "amend" an award if doing so "resolve[s]" an "issue" "omitted" from the award but "necessary to decide the parties' controversy" and where the omission was due to the arbitrator's "mistake, inadvertence, or excusable neglect." (*Heimlich v. Shivji* (2019) 7 Cal.5th 350, 363-364; *A.M. Classic Construction, Inc. v. Tri-Build Development Co.* (1999) 70 Cal.App.4th 1470, 1476, 1478 (*A.M. Classic*); accord, *Britz, Inc. v. Alfa-Laval Food & Dairy Co.* (1995) 34 Cal.App.4th 1085, 1105-1106 [allowing arbitrator to modify award to add amount of attorney fees not previously calculated, albeit characterizing it as a defect as to "form"].) These powers to correct and to amend do *not* include the power to "reconsider the merits of the original award." (*Landis v. Pinktertons, Inc.* (2004) 122 Cal.App.4th 985, 992 (*Landis*); see also, *Severtson v. Williams Construction Co.* (1985) 173 Cal.App.3d 86, 95-96 [not allowing arbitrator to modify amounts of attorney fees and costs previously set forth in award].) Procedurally, the deadline for *correcting* an award is "not [more] than" 30 days after the "award" was "served" (§ 1284), while the courts are split on the deadline for *amending* an award—some hold that amendment is timely as long as it is prior to "judicial confirmation of the original award" (*A.M. Classic,* at p. 1478; *Delaney v. Dahl* (2002) 99 Cal.App.4th 647, 658-659), while others hold that amendment must occur within the deadline for correcting an award (*Century City Medical Plaza v. Sperling* (2001) 86 Cal.App.4th 865, 881, distinguished on other grounds, *Law Offices of David S. Karton v. Segreto* (2009) 176 Cal.App.4th 1, 5-6; *Landis*, at p. 992).

If a ruling constitutes an "award," the trial court also acquires jurisdiction to confirm, correct or vacate the award. (§ 1285 ["Any party to an arbitration in which an *award* has been

made may petition the court to confirm, correct or vacate the *award*."], italics added; *Cooper*, *supra*, 230 Cal.App.4th at pp. 18-19.) The issuance of an "award" is what passes the torch of jurisdiction from the arbitrator to the trial court.

By negative implication, a ruling that is *not* an "award" is neither subject to the above stated limits on an arbitrator's power to modify that ruling nor subject to confirmation, correction or vacation by a trial court.

So how does a trial court determine whether an arbitrator's ruling constitutes an "award"?

It does so by examining whether the ruling meets the statutory definition of "award" when considered in the context of the arbitration proceedings agreed to by the parties. The Act defines an "award" as a written ruling that "include[s] a determination of all the questions submitted to the arbitrators the decision of which is necessary in order to determine the controversy." (§ 1283.4.) This statutory definition necessarily looks to the particulars of the arbitration at issue: The parties who have contractually agreed to arbitrate get to decide how to structure their arbitration proceeding (subject to the arbitration entity's governing rules) and, thus, which "'questions [are to be] submitted to the arbitrator[]'" (*Kaiser Foundation Health Plan, Inc. v. Superior Court* (2017) 13 Cal.App.5th 1125, 1131 (*Kaiser*) ["Parties generally have broad leeway to structure an arbitration as they see fit, free from statutory constraints"]; see generally, *First Options of Chicago, Inc. v. Kaplan* (1995) 514 U.S. 938, 943 [arbitration "is . . . a matter of contract between the parties"]), and "the arbitrator[]" gets "to determine what issues are 'necessary' to" determine the controversy under section 1283.4 (*Advanced Micro*, *supra*, 9 Cal.4th at p. 372). But this leeway

14

granted to the parties and their arbitrator does not relieve a trial court from its duty to assess for itself whether the ruling of the arbitrator at issue meets the statutory definition of an "award." (*Cinel v. Christopher* (2012) 203 Cal.App.4th 759, 767 ["the trial court has a duty, in order to follow the dictates of section 1283.4, to ensure that the arbitrator's 'award' is an 'award' within the meaning of that statute"]; cf. *Maplebear, Inc. v. Busick* (2018) 26 Cal.App.5th 394, 407 (*Maplebear*) ["parties to an arbitration agreement cannot confer jurisdiction on courts to review arbitrator's rulings by agreeing to . . . allow immediate review of some interim [rulings]"]; *Kaiser*, at p. 1142 ["An arbitrator's designation of his or her ruling as an 'award' does not make it one under section 1283.4."].) That is because, as explained above, whether a ruling constitutes an "award" is what confers jurisdiction upon trial courts (§ 1285), and because the parties may not by their consent move the statutory boundaries of a court's jurisdiction (*Jennings v. Marralle* (1994) 8 Cal.4th 121, 127 ["jurisdiction may not be conferred by consent of the parties"]; *Judge v. Nijjar Realty, Inc.* (2014) 232 Cal.App.4th 619, 636 (*Judge*) [same]).

Although parties to an arbitration often (and, indeed, presumptively) structure their arbitration proceedings to produce a single, final "award" subject to judicial review (*Moncharsh v. Heily & Blase* (1992) 3 Cal.4th 1, 9; *Hightower v. Superior Court* (2001) 86 Cal.App.4th 1415, 1432 (*Hightower*)), parties may expressly agree to have an arbitrator issue a series of rulings in the course of resolving their dispute (*Hightower*, at p. 1433; *Kaiser, supra*, 13 Cal.App.5th at p. 1131 [parties may "conduct the arbitration in phases and ask the arbitrators . . . to issue phase-specific, interim" rulings]). As noted above, whether any

15

*particular* ruling constitutes an "award" turns on whether that ruling satisfies the statutory definition of an "award." And in the context of a series of rulings, this means that a particular ruling is an "award" only if that ruling (1) "determine[s] all issues that are necessary to the resolution" of "the controversy" being subjected to arbitration, and (2) leaves unresolved only those "issues" that are "potential," "conditional" or that otherwise "could not have been determined" at the time of that ruling. (*Hightower*, at p. 1439 [ruling is an "award" because it resolves all but "those potential and conditional issues that necessarily could not have been determined" at the time of the ruling]; *Kaiser*, *supra*, 13 Cal.App.5th at p. 1149 [ruling is an "award" when it leaves open for future resolution "issues" that "could not have been decided" at that time "because their nature and scope were uncertain as of the award date"]; *Judge*, *supra*, 232 Cal.App.4th at pp. 633-634 [same].)

Conferring "award" status only upon those rulings that resolve every part of the parties' controversy that can be resolved at that time furthers the underlying purpose of arbitration. Arbitration is designed to provide "'an efficient, streamlined'" mechanism for resolving disputes. (*Sonic-Calabasas A, Inc. v. Moreno* (2013) 57 Cal.4th 1109, 1140.) Ensuring that trial court jurisdiction is reserved for only those arbitral rulings that effectively determine all issues presented for arbitration that are capable of determination at that time means that parties may not seek seriatim judicial review of an arbitrator's interlocutory rulings, which is critical because such piecemeal judicial intervention would slow down the dispute resolution process as the parties bounce back and forth between the arbitral and judicial fora. (*Maplebear*, *supra*, 26 Cal.App.5th at pp. 403-404;

16

*Kaiser*, *supra*, 13 Cal.App.5th at pp. 1145-1146; see also *Mossman v. City of Oakdale* (2009) 170 Cal.App.4th 83, 91 ["an arbitration award is expected to be a final and conclusive resolution of the dispute"].)

Applying this standard, courts have held that an arbitrator's ruling did not constitute an "award" when it decided whether the parties may seek class certification (*Maplebear*, *supra*, 26 Cal.App.5th at p. 403), whether a plaintiff's claim was preempted by federal law (*Kaiser*, *supra*, 13 Cal.App.5th at p. 1144), and whether claims asserted on a classwide or representative basis were subject to arbitration (*Judge*, *supra*, 232 Cal.App.4th at pp. 622, 633-634). These rulings were not "awards" because they left much of the parties' controversy unresolved. Conversely, courts have held that an arbitrator's ruling *did* constitute an "award" when it allowed one party the opportunity to obtain financing to buy out the other but "reserved jurisdiction" to review any "additional issues" that might arise in the future (*Hightower*, *supra*, 86 Cal.App.4th at pp. 1424-1428, italics omitted), when it decided whether a particular asset of an estate was community or separate property but reserved jurisdiction to make further determinations "'in light of new developments'" (*Roehl v. Ritchie* (2007) 147 Cal.App.4th 338, 340-341 (*Roehl*)), and when it ruled that one party had a duty to defend but retained jurisdiction to award costs should a cost award be requested in the future (*EHM Productions, Inc. v. Starline Tours of Hollywood, Inc.* (2018) 21 Cal.App.5th 1058, 1062, 1066-1067 [at the time of the first ruling, arbitrator had "no way of knowing when, or if, a cost award would issue"]).

**B.** *Application*

Under this framework, the Second Interim Ruling does not meet the definition of an "award" on the basis of the following undisputed facts: That ruling made findings that plaintiffs were entitled to compensatory damages, that plaintiffs were entitled to punitive damages, and that plaintiffs were the "prevailing party" for purposes of awarding attorney fees and costs. That ruling also fixed the amount of compensatory damages and punitive damages. But it did not fix the amount of attorney fees and costs. Because it left this last issue unresolved, the Second Interim Ruling did not determine all issues necessary to the resolution of the controversy between the parties. What is more, the issue of attorney fees and costs was not potential, conditional or incapable of determination at the time of the Second Interim Ruling. The arbitrator *could* have fixed the amount at that time, but the arbitrator and the parties agreed she would defer doing so pending further briefing and a further hearing. Because the Second Interim Ruling does not meet either element of the above stated definition of "award," it is not an "award" and thus was not subject to the substantive and procedural limits on modifying awards. The arbitrator therefore did not exceed her statutory authority to incorporate a modification to the Second Interim Ruling in the Final Award. The trial court's ruling to the contrary was therefore incorrect, and the Final Award should have been confirmed, not corrected.

Patel resists this conclusion with what boil down to two categories of arguments.

First, he argues that plaintiffs are judicially estopped from arguing that the Second Interim Ruling is *not* an "award" because they previously argued to the trial court that all three of

18

the arbitrator's rulings (including the Second Interim Ruling) *were* "awards." It is true that plaintiffs—as part of a broader argument—argued that the Second Interim Ruling was an "award," but this does not judicially estop plaintiffs from arguing on appeal that the Second Interim Ruling is not an "award." The doctrine of judicial estoppel may be invoked only when "'(1) the same party has taken two positions; (2) the positions were taken in judicial or quasi-judicial administrative proceedings; (3) the party was successful in asserting the first position (i.e., the tribunal adopted the position or accepted it as true); (4) the two positions are totally inconsistent; and (5) the first position was not taken as a result of ignorance, fraud, or mistake.'" (*Aguilar v. Lerner* (2004) 32 Cal.4th 974, 986-987.) In this case, plaintiffs *withdrew* their argument that *all three* of the arbitrator's rulings were "awards" at the hearing held prior to the trial court's ruling; indeed, Patel complained about their shift in position.[6] What is more, the trial court never adopted plaintiffs' position: Although the court did find that the Second Interim Ruling was an "award," the court *also* declined to find that the First Interim Ruling was an "award"; yet plaintiffs' position (prior to abandoning it) was that *both* Interim Rulings were "awards." Given these facts, we would in any event also decline to exercise our discretion to apply the doctrine even if we assume that its

---

[6] Contrary to what Patel asserts, the fact that plaintiffs *again* shifted position after the trial court issued its ruling in a filing asking the court to confirm the First Interim Ruling is not a basis for applying judicial estoppel. By that point in time, the court had already issued its ruling and adopted a position *at odds with* plaintiffs' position.

19

prerequisites were met. (*MW Erectors, Inc. v. Niederhauser Ornamental & Metal Works Co., Inc.* (2005) 36 Cal.4th 412, 422.)

Second, Patel offers three reasons why the Second Interim Ruling *is* an "award" within the meaning of section 1283.4. To begin, he argues that it is an award because it "resolved all issues submitted for decision" in the second phase of the arbitration. We reject this argument. What matters is whether the ruling "resolve[d] the parties' *controversy*, not a question within the controversy." (*Kaiser*, *supra*, 13 Cal.App.5th at p. 1146, italics added.) Were the rule otherwise, almost *every* ruling would be an "award" because almost every ruling decides the issue it was called upon to decide. Next, Patel argues that a ruling is not an "award" only when it deals with "preliminary" issues, such as class certification (as in *Maplebear*), preemption (as in *Kaiser*), or the propriety of representative claims (as in *Judge*). Because the arbitrator's Second Interim Ruling in this case resolved the main issues of liability as well as compensatory and punitive damages, Patel continues, it was in no sense "preliminary." While some of the cases certainly refer to the arbitrator's rulings as "resolv[ing] only a preliminary issue" (*Maplebear*, *supra*, 26 Cal.App.5th at p. 405), what makes the resolution of that issue "preliminary" is not that it is preliminary *along the time horizon of a case* but rather that it is preliminary *to the full resolution of the issues to be decided*. As noted above, the Second Interim Ruling is preliminary to the full resolution of the issues to be decided because it had yet to fix the amount of the attorney fees and costs to which it had already determined plaintiffs were entitled. Finally, Patel argues that the arbitrator never used the words "not final" in the Second Interim Ruling. This argument is without merit. Legally, as noted above, the arbitrator's choice of

20

label is not dispositive.  Factually, the arbitrator could not have been clearer that it was not resolving every issue and was leaving at least one issue unresolved:  The arbitrator called the ruling a "Second *Interim* Award" (and interim, by definition, means "not final"), left the amount of attorney fees and costs blank, and qualified that its declaration that "[t]his award resolves all issues submitted for decision in this proceeding" was not to be "insert[ed]" until the "Final Award."  And in case there was any lingering ambiguity, the arbitrator clarified in the Final Award that "[t]he prior awards were Interim Awards and not yet final."

\* \* \*

In light of this analysis, we have no occasion to evaluate plaintiffs' alternative argument for reversal—namely, that if the Second Interim Ruling is an "award," then so is the First Interim Ruling, such that the arbitrator's modification of that First Interim Ruling was untimely and that the compensatory damages award of $558,266 in that First Interim Ruling must be reinstated.

## II.  Attorney Fees and Costs

### A.  *Reduction in attorney fees award*

Plaintiffs argue that the trial court erred, when awarding them attorney fees and costs incurred in the post-arbitration judicial proceedings, in declining to award them the attorney fees they incurred in filing a petition to confirm the First Interim Ruling after the trial court granted Patel's motion to correct the Final Award.  A party who prevails in post-arbitration judicial proceedings is entitled to its costs, including attorney fees if the parties have a contract providing for the award of such fees and costs.  (§§ 1293.2 ["The court shall award costs upon any judicial proceeding" in accordance "with [section] 1021."], 1021 [looking to

21

"agreement . . . of the parties"], 1032, subd. (b) [entitlement to costs is mandatory], 1033.5, subd. (a)(10)(A) [costs include attorney fees "authorized by . . . [c]ontract"]; accord, *Marcus & Millichap Real Estate Investment Brokerage Co. v. Woodman Investment Group* (2005) 129 Cal.App.4th 508, 513.) We review a trial court's determination of the prevailing party and of the amount of attorney fees to award for an abuse of discretion. (*Olive v. General Nutrition Centers, Inc.* (2018) 30 Cal.App.5th 804, 824 [prevailing party]; *Walent v. Commission of Professional Competence etc.* (2017) 9 Cal.App.5th 745, 748-749 [amount].)

The trial court did not abuse its discretion in concluding that the agreement here provided for the award of attorney fees to "the party in whose favor a final judgment or award is entered," that plaintiffs were that party in the post-arbitration judicial proceedings (because, as we conclude above, they were entitled to a confirmation of the Final Award), or in declining to award plaintiffs the $9,009 in attorney fees they incurred in filing the petition to confirm the First Interim Ruling. By the time plaintiffs filed that petition, the trial court had already accepted the argument that the Second Interim Ruling was an "award" and *rejected* the argument that the First Interim Ruling was also an "award" on the ground that plaintiffs had waived that argument by not previously moving to confirm the First Interim Ruling. Whether or not that waiver ruling was correct, plaintiffs' petition was designed to emphasize to the trial court the logical consequence of that ruling that could have been raised in a motion for reconsideration; the trial court was thus within its discretion in finding that the petition constituted an "improper motion for reconsideration." Because trial courts have the discretion to discount a fee request when the "amount requested

22

is based upon unnecessary or duplicative work" (*Wilkerson v. Sullivan* (2002) 99 Cal.App.4th 443, 448), the court acted within its discretion in declining to award fees for this unnecessary and duplicative petition.

**B.**     ***Award of post-arbitration attorney fees and costs to plaintiffs (rather than Patel)***

Patel argues that the trial court erred in denying his motion for attorney fees incurred in the post-arbitration judicial proceedings.  His argument is premised on the fact that he is a "prevailing party" entitled to fees because he prevailed on his petition to correct the Final Award and that plaintiffs did not prevail on their petition to confirm that Final Award (or any of plaintiffs' other successive petitions).  Because we have determined that the trial court erred and should have granted plaintiffs' petition to confirm, we have necessarily also determined that Patel's petition to correct should have been denied and that he did not prevail in any aspect of the post-arbitration judicial proceedings.  This definitively disposes of his argument.

**C.**     ***Attorney fees on appeal***

Plaintiffs also argue that they are entitled to attorney fees for this appeal.  As we have concluded, plaintiffs prevailed in the post-arbitration proceedings before the trial court.  As noted above, they have also prevailed on appeal.  Because the attorney fees clause in the agreement is broad enough to include fees on appeal from a judgment confirming, correcting, or vacating an arbitration award (*Ajida Techs., Inc. v. Roos Instruments* (2001) 87 Cal.App.4th 534, 551-552; *Harbour Landing-Dolfann v. Anderson* (1996) 48 Cal.App.4th 260, 263; *MBNA America Bank, N.A.. v. Gorman* (2006) 147 Cal.App.4th Supp. 1, 13-14; see also *Villinger/Nicholls Development Co. v. Meleyco* (1995) 31

Cal.App.4th 321, 329 ["Where a contract or a statute creates a right for the prevailing party to recover attorney fees, the prevailing party is also entitled to attorney fees on appeal."]), we grant plaintiffs' request for attorney fees on appeal and leave it to the trial court to fix the reasonable amount of those fees.

## DISPOSITION

The judgment denying plaintiffs' petition to confirm the arbitration award and granting Patel's petition to correct the arbitration award is reversed. We otherwise affirm the trial court's order awarding plaintiffs' attorney fees and costs. We also find that plaintiffs are entitled to costs and reasonable attorney fees incurred in this appeal. We therefore remand with directions to grant plaintiffs' petition to correct the Final Award and enter judgment for plaintiffs in the amount of that award (less the amount of satisfaction of the judgment paid by Patel, if any), and to determine the amount of costs and reasonable attorney fees plaintiffs incurred on appeal.

## <u>CERTIFIED FOR PARTIAL PUBLICATION</u>.


_____, J.
HOFFSTADT

We concur:


_____, P. J.
LUI


_____, J.
CHAVEZ

24