Filed 7/12/17

**CERTIFIED FOR PUBLICATION**

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SECOND APPELLATE DISTRICT

DIVISION EIGHT

| | |
|---|---|
| LOS ANGELES UNIFIED SCHOOL DISTRICT, <br><br> Plaintiff and Respondent, <br><br> v. <br><br> SAFETY NATIONAL CASUALTY CORPORATION, <br><br> Defendant and Appellant. | B275597 <br><br> (Los Angeles County Super. Ct. No. BC593234) |

APPEAL from an order of the Superior Court of Los Angeles County.  Kenneth R. Freeman, Judge.  Affirmed.

Duane Morris, Philip R. Matthews, Paul J. Killion, and Christine B. Cusick for Defendant and Appellant.

Jones Day, David W. Steuber, Tara C. Kowalski, Craig M. Hirsch; Andrade Gonzalez, Sean A. Andrade, Stephen V. Masterson, and April E. Navarro for Plaintiff and Respondent.

———————————————

## SUMMARY

The question in this case is whether the procedural provisions of the Federal Arbitration Act (FAA, 9 U.S.C. § 1 et seq.) apply to a motion to compel arbitration in a California state court, where the arbitration agreement is governed by the FAA (because it involves interstate commerce), but the agreement has no choice-of-law provision, and no provision stating the FAA's procedural provisions govern the arbitration.

We conclude California procedure applies in these circumstances, and the trial court did not abuse its discretion when it denied an insurer's motion to compel arbitration with its insured, based on the possibility of conflicting rulings in pending litigation with third parties. (Code Civ. Proc., § 1281.2, subd. (c) (section 1281.2(c)).)

## FACTS

In September 2015, plaintiff Los Angeles Unified School District sued 27 insurance companies that had issued policies of primary or excess liability insurance to plaintiff. Plaintiff alleged the insurers breached their insurance contracts and tortiously breached the covenant of good faith and fair dealing by refusing to provide coverage – under more than 100 insurance policies spanning the years between 1975 and 2012 – for third party claims and lawsuits referred to collectively as the Miramonte litigation. These third party claims alleged that plaintiff's negligence "in hiring, retaining, and supervising caused hundreds of students to be repeatedly exposed to abuse by two teachers working at Miramonte Elementary School for decades . . . ."

Plaintiff sought declaratory relief and more than $200 million in damages. The complaint alleged 203 causes of action against the various insurers, the last one seeking a

2

declaration against all the insurers that the Miramonte litigation constituted a single occurrence under the policies, and "all defense and indemnity sums incurred by or on behalf of the [plaintiff] in connection with that Litigation result from that single occurrence." The lawsuit was designated a complex case. (Cal. Rules of Court, rule 3.400.)

Defendant Safety National Casualty Corporation is one of the 27 insurers. Plaintiff alleged defendant's wrongful refusal to defend and indemnify plaintiff under two policies, the "Safety 82/83 1ST XS Policy" and the "Safety 83/84 1ST XS Policy." (A declaration from defendant says it issued a policy "for at least the policy period June 1, 1982 to July 1, 1983," and that an endorsement "appears to extend coverage for the following year, but there is evidence . . . that makes it unclear if that extended coverage was subsequently cancelled." The policy "contains limits of $5,000,000 per occurrence excess of $20,000,000 per occurrence, and a self-insured retention of $1,500,000.")

Defendant's policy contained an arbitration clause, and defendant filed a motion to compel arbitration, and to dismiss or stay the action against it. The policy's arbitration clause provides, in pertinent part:

> "As a condition precedent to any right of action under this Agreement, . . . any dispute arising out of this Agreement shall be submitted to the decision of a board of arbitration. The board of arbitration will be composed of two arbitrators and an umpire, meeting in St. Louis, Missouri, unless otherwise agreed. [¶] The members of the board of arbitration shall be active or retired, disinterested officials of insurance or reinsurance companies. Each party shall appoint

its arbitrator, and the two arbitrators shall choose an umpire before instituting the hearing. . . . [¶] . . . [¶] The board shall make its decision with regard to the custom and usage of the insurance and reinsurance business. The board shall issue its decision in writing based upon a hearing in which evidence may be introduced without following strict rules of evidence but in which cross examination and rebuttal shall be allowed."

Defendant contended the FAA applied as a matter of law to the parties' dispute, because the policy is a contract evidencing a transaction involving interstate commerce. Because there was a valid agreement to arbitrate encompassing the dispute at issue, defendant argued, the court was required under the FAA to "make an order directing the parties to proceed to arbitration in accordance with the terms of the agreement." (9 U.S.C. § 4.)

Plaintiff opposed the motion, proffering multiple arguments, including that section 1281.2(c) applied and compelled denial of the motion; and that the FAA's procedural provisions do not apply unless the contract contains a choice-of-law clause expressly incorporating those provisions.

Defendant's reply contended the lack of any choice-of-law clause mandated application of the FAA, and even if California rules applied, arbitration would be proper because plaintiff "failed to make any showing to support a finding of possible inconsistent rulings, as is necessary under . . . section 1281.2(c)."

The trial court denied the motion to compel arbitration. The court found an agreement to binding arbitration existed, and the policies themselves, together with pertinent legal authorities, showed the insurance transaction involved interstate commerce.

4

Relying on *Valencia v. Smyth* (2010) 185 Cal.App.4th 153, the court concluded the FAA's substantive provisions applied, but its procedural provisions did not, because the contract did not contain a clause expressly incorporating those provisions. Accordingly, the court found California rules of procedure governed. The court further found there was a possibility of conflicting rulings under section 1281.2(c). (We will describe the court's comments on the last point in connection with our legal discussion, pt. 3, *post*.)

Defendant filed a timely notice of appeal.

## DISCUSSION

Defendant contends the trial court's application of California's procedural law on arbitration was error, and even if California law applies, the trial court erred in denying arbitration based on the possibility of inconsistent rulings. We disagree on both points.

We review the first question de novo, and the second for abuse of discretion. (*Mastick v. TD Ameritrade, Inc.* (2012) 209 Cal.App.4th 1258, 1262-1263.)

## 1. The Legal Background

We begin with a brief description of the relevant statutes and principles.

It is undisputed that the substantive provisions of the FAA govern the arbitration agreement, because the insurance contract involves interstate commerce. As the high court has said, "the FAA's 'substantive' provisions—§§ 1 and 2—are applicable in state as well as federal court . . . ." (*Volt Info. Sciences v. Leland Stanford Jr. U.* (1989) 489 U.S. 468, 477, fn. 6 (*Volt*).) Section 1 defines the term "commerce," and section 2 is "the primary substantive provision of the FAA . . . ." (*Cronus Investments, Inc.*

5

*v. Concierge Services* (2005) 35 Cal.4th 376, 384 (*Cronus*).)
Section 2 provides in pertinent part that "[a] written provision in
. . . a contract evidencing a transaction involving commerce to
settle by arbitration a controversy thereafter arising out of such
contract or transaction, or the refusal to perform the whole or any
part thereof, . . . shall be valid, irrevocable, and enforceable, save
upon such grounds as exist at law or in equity for the revocation
of any contract."  (9 U.S.C. § 2.)

Sections 3 and 4 of the FAA are procedural provisions.
(*Cronus, supra,* 35 Cal.4th at p. 389.)  Section 3 of the FAA
provides that if a suit is brought "in any of the courts of the
United States" on an issue referable to arbitration under a
written arbitration agreement, the court "shall on application of
one of the parties stay the trial of the action until such
arbitration has been had in accordance with the terms of the
agreement . . . ."  (9 U.S.C. § 3.)  Section 4 allows a party
aggrieved by an alleged refusal to arbitrate to "petition any
United States district court" that would have jurisdiction of the
subject matter in a civil action "for an order directing that such
arbitration proceed in the manner provided for in such
agreement."  (9 U.S.C. § 4.)

In California, section 1281.2(c) allows a court to refuse to
enforce an agreement to arbitrate, if the court determines that
"[a] party to the arbitration agreement is also a party to a
pending court action or special proceeding with a third party,
arising out of the same transaction or series of related
transactions and there is a possibility of conflicting rulings on a
common issue of law or fact."[1]  Unlike the procedure in

---

[1]      Under those circumstances, "the court (1) may refuse to
enforce the arbitration agreement and may order intervention or

California, the FAA by its terms "leaves no place for the exercise of discretion by a district court, but instead mandates that district courts *shall* direct the parties to proceed to arbitration on issues as to which an arbitration agreement has been signed." (*Dean Witter Reynolds Inc. v. Byrd* (1985) 470 U.S. 213, 218; *id.* at p. 217 [holding the FAA "requires district courts to compel arbitration of pendent arbitrable claims when one of the parties files a motion to compel, even where the result would be the possibly inefficient maintenance of separate proceedings in different forums"].)

## 2. California Procedure Applies.

Many cases have discussed whether and when the FAA's procedural provisions apply in state courts. *Volt* tells us the FAA "simply requires courts to enforce privately negotiated agreements to arbitrate, like other contracts, in accordance with their terms." (*Volt, supra,* 489 U.S. at p. 478.) The FAA does not "prevent[] the enforcement of agreements to arbitrate under different rules than those set forth in the Act itself." (*Volt,* at p. 479.) So, for example, "[w]here . . . the parties have agreed to abide by state rules of arbitration, enforcing those rules according to the terms of the agreement is fully consistent with the goals of the FAA, even if the result is that arbitration is stayed where the Act would otherwise permit it to go forward." (*Ibid.*)

---

joinder of all parties in a single action or special proceeding; (2) may order intervention or joinder as to all or only certain issues; (3) may order arbitration among the parties who have agreed to arbitration and stay the pending court action or special proceeding pending the outcome of the arbitration proceeding; or (4) may stay arbitration pending the outcome of the court action or special proceeding." (§ 1281.2.)

7

In this case, however, there is no agreement to abide by state rules, and no agreement to abide by FAA procedural rules. Instead the agreement is completely silent, with no terms mentioning or alluding to the FAA, California law, or any other state law or rules of procedure.

Under these circumstances, we hold the principles discussed in *Cronus* compel the conclusion that California procedure applies in California courts.

*Cronus* described or established several pertinent principles.

First, the FAA "does not preempt the application of section 1281.2, subdivision (c) where the parties have agreed that their arbitration agreement would be governed by the law of California." (*Cronus, supra,* 35 Cal.4th at p. 380 [describing the holding in *Volt, supra,* 489 U.S. 468].)

Second, the *Cronus* case presented circumstances where the parties agreed that their arbitration agreement would be governed by California law, "but they further agreed that the designation of California law 'shall not be deemed an election to preclude application of the [FAA], if it would be applicable.' " (*Cronus, supra,* 35 Cal.4th at p. 380.) The court concluded that "in this situation, the FAA also does not preempt the application of section 1281.2, subdivision (c)." (*Ibid.*)

Third, in reaching its conclusion, the *Cronus* court stated the analytical principle to be applied: "Under United States Supreme Court jurisprudence, we examine the language of the contract to determine whether the parties intended to apply the FAA to the exclusion of California procedural law and, if any ambiguity exists, to determine whether section 1281.2(c) conflicts

with or frustrates the objectives of the FAA." (*Cronus, supra,* 35 Cal.4th at p. 383.)

Fourth, *Cronus* concluded *both* that section 1281.2(c) does not conflict with the procedural provisions of the FAA *and* that section 1281.2(c) does not contravene the substantive goals and policies of the FAA. The court first discussed procedure, and then turned to substance.

In concluding that "the procedural provisions of the FAA [(§§ 3 and 4)] and section 1281.2 do not conflict" (*Cronus, supra,* 35 Cal.4th at p. 390), the court observed: "[t]he language used in sections 3 and 4 and the legislative history of the FAA suggest that the sections were intended to apply only in federal court proceedings." (*Id.* at p. 388; see also *Cable Connection, Inc. v. DIRECTV, Inc.* (2008) 44 Cal.4th 1334, 1351 (*Cable Connection*) ["Sections 3 and 4 of the FAA, governing stays of litigation and petitions to enforce arbitration agreements, do not apply in state court"].)[2]

_____

[2] *Cronus* also observed that the high court "does not read the FAA's procedural provisions to apply to state court proceedings. '[W]e do not hold that §§ 3 and 4 of the Arbitration Act apply to proceedings in state courts. Section 4, for example, provides that the Federal Rules of Civil Procedure apply in proceedings to compel arbitration. The Federal Rules do not apply in such state court proceedings.' [Citation.] In *Volt*, the high court later confirmed that, 'While we have held the FAA's "substantive" provisions—§§ 1 and 2—are applicable in state as well as federal court [citation], we have never held that §§ 3 and 4, which by their terms appear to apply only to proceedings in federal court [citations], are nonetheless applicable in state court.' (*Volt, supra,* 489 U.S. at p. 477, fn. 6.) Reaffirming *Volt*'s distinction between the procedural and substantive aspects of the FAA, the court further described section 1281.2(c) as 'determin[ing] only

*Cronus* also relied on the court's prior decision in *Rosenthal v. Great Western Fin. Securities Corp.* (1996) 14 Cal.4th 394 (*Rosenthal*), quoting *Rosenthal*'s statement (*id.* at p. 409) that, " 'Like other federal procedural rules, therefore, "the procedural provisions of the [FAA] are not binding on state courts . . . *provided applicable state procedures do not defeat the rights granted by Congress.*" ' " (*Cronus, supra,* 35 Cal.4th at p. 390, italics added in *Cronus*.)  Further:  " 'Our statutes do establish procedures for determining enforceability not applicable to contracts generally, but they do not thereby run afoul of the [FAA's] section 2, which states the principle of equal enforceability, but does not dictate the procedures for determining enforceability.' "[3]  (*Cronus,* at p. 390.)

Finally, *Cronus* rejected claims that application of section 1281.2(c) would contravene the substantive goals and policies of the FAA (*Cronus, supra,* 35 Cal.4th at p. 387), and that section 1281.2(c) "conflicts with the spirit of the FAA because its application would undermine and frustrate . . . section 2's policy of enforceability of arbitration agreements."  (*Cronus,* at pp. 391, 391-393.)  The court observed:

the efficient order of proceedings [and] not affect[ing] the enforceability of the arbitration agreement itself.'  [Citation.]" (*Cronus, supra,* 35 Cal.4th at pp. 389-390.)

[3]     In *Rosenthal*, the court held that, while an agreement was subject to the FAA, "the federal provision for a jury trial of questions regarding the existence of an arbitration agreement (9 U.S.C. § 4) does not operate in California state courts." (*Rosenthal, supra,* 14 Cal.4th at p. 402.)

10

"[S]ection 1281.2(c) is *not* a special rule limiting the authority of arbitrators.  It is an evenhanded law that allows the trial court to stay arbitration proceedings while the concurrent lawsuit proceeds *or* stay the lawsuit while arbitration proceeds to avoid conflicting rulings on common issues of fact and law amongst interrelated parties.  Moreover, '[s]ection 1281.2(c) is not a provision designed to limit the rights of parties who choose to arbitrate or otherwise to discourage the use of arbitration.  Rather, it is part of California's statutory scheme designed to enforce the parties' arbitration agreements, as the FAA requires.  Section 1281.2(c) addresses the peculiar situation that arises when a controversy also affects claims by or against other parties not bound by the arbitration agreement.  The California provision giving the court discretion not to enforce the arbitration agreement under such circumstances—in order to avoid potential inconsistency in outcome as well as duplication of effort—does not contravene the letter or the spirit of the FAA.' " (*Cronus, supra,* 35 Cal.4th at p. 393.)

The court concluded:  "Our opinion does not preclude parties to an arbitration agreement to *expressly* designate that any arbitration proceeding should move forward under the FAA's procedural provisions rather than under state procedural law.  We simply hold that the language of the arbitration clause in this case, calling for the application of the FAA 'if it would be applicable,' should not be read to preclude the application of 1281.2(c), because it does not conflict with the applicable provisions of the FAA and does not undermine or frustrate the FAA's substantive policy favoring arbitration." (*Cronus, supra,* 35 Cal.4th at p. 394.)

11

In sum, *Cronus* leaves us with several incontrovertible principles. Section 1281.2(c) does not contravene the letter or spirit of the FAA. (*Cronus, supra,* 35 Cal.4th at p. 393.) California procedure ordinarily applies in California courts, and sections 3 and 4 of the FAA ordinarily do not. (*Cronus,* at p. 388; see also *Cable Connection, supra,* 44 Cal.4th at p. 1351.) Consequently, where, as here, the parties do not "*expressly* designate that any arbitration proceeding should move forward under the FAA's procedural provisions rather than under state procedural law" (*Cronus,* at p. 394), California procedures necessarily apply. (See also *Judge v. Nijjar Realty, Inc.* (2014) 232 Cal.App.4th 619, 632 ["Absent an agreement by the parties to apply the procedural provisions of the FAA to their arbitration, federal procedural rules apply only where state procedural rules conflict with or defeat the rights Congress granted in the FAA."]; *Valencia v. Smyth, supra*, 185 Cal.App.4th at p. 174 ["the procedural provisions of the [California Arbitration Act] apply in *California* courts by default"].)

3.    **Denial of the Motion to Compel Was Proper.**

Defendant argues the trial court abused its discretion when it denied arbitration under the authority of section 1281.2(c). Again, we disagree.

As stated earlier, section 1281.2(c) allows a court to refuse to enforce an arbitration agreement if a party to the agreement is also a party to a pending court action with a third party, "arising out of the same transaction or series of related transactions and there is a possibility of conflicting rulings on a common issue of law or fact." A trial court "may deny a party's contractual right to arbitration only when all of section 1281.2(c)'s conditions are

satisfied." (*Acquire II, Ltd. v. Colton Real Estate Group* (2013) 213 Cal.App.4th 959, 980 (*Acquire II*).)

Defendant contends two conditions are not satisfied.

Defendant first asserts plaintiff's court action against the other insurers does not arise out of "the same transaction or series of related transactions" as plaintiff's action against defendant. Defendant tells us the "transactions at issue" are the insurance contracts issued by each insurer, and "[t]here are no related 'transactions' because the policies were purchased at different times, from different insurers, and involve different contract terms and cover different time periods."

Defendant – who did not make this argument to the trial court – admits that section 1281.2(c) does not define the term "transaction," and cites no authority that supports its constricted notion of the term.[4] The trial court's view was this: "This

---

[4] Defendant cites *Acquire II, supra*, 213 Cal.App.4th 959, where "the record fail[ed] to show that . . . the claims of any group of Plaintiffs who agreed to arbitration and the claims of any group of Plaintiffs who did not agree to arbitration arose out of the same transaction or series of related transactions . . . ." (*Id.* at p. 973.) The case involved a wide variety of fraud-related claims by 250 investors against the defendants, who had created six different investment funds over a 10-year period to purchase and manage six portfolios of commercial real estate. (*Id.* at pp. 963, 965-966.) The defendants filed six motions to compel six of the 12 groups of plaintiffs to arbitrate their claims. (The other six groups invested in funds that had no arbitration agreements in their governing documents.) (*Id.* at p. 963.) Each group of plaintiffs invested in different funds or properties, at different times, under separate private placement memoranda, and "executed separate agreements to define their rights and obligations depending on the fund or property in which they

13

litigation arises out of a series of related transactions – namely, [plaintiff's] alleged entitlement to insurance coverage arising out of the underlying *Miramonte* litigation." Defendant says this ruling was "incorrect," but offers no cogent reason for that assertion. Indeed, defendant admits that plaintiff's claims "against all its insurers arise out of a common set of underlying claims," but at the same time insists that plaintiff's dispute "with each insurer arises out of each separate insurance transaction." We think not; the dispute arises out of each insurer's refusal to defend or indemnify against the very same underlying claims, and further arises in the context of plaintiff's claim, against all the insurers, that the Miramonte litigation constituted a single occurrence under the policies. We find no fault in the trial court's assessment.

Defendant's second contention is that plaintiff "failed to provide substantial evidence that there would be a possibility of conflicting rulings on a common issue of law or fact." Specifically, defendant says the "only possibility of inconsistent rulings noted in the trial court's order" is whether or not the underlying litigation represents a single "occurrence" for purposes of insurance coverage. And, defendant tells us, "there is no real possibility of either the court or the arbitration panel ruling that there was only one occurrence, and even if one tribunal did, such inconsistent rulings would not impact the triggering of the excess

---

invested." (*Id.* at p. 974.) And the plaintiffs' claims "regarding Defendants' management of the funds and properties also arose out of separate transactions because Defendants managed different funds and different properties for each group of Plaintiffs." (*Ibid.*) We see nothing in *Acquire II* that assists defendant in this case.

coverage obligations under [defendant's policy] because they are so high level."

Defendant's view is mistaken on multiple levels.

First, "the allegations of the parties' pleadings may constitute substantial evidence sufficient to support a trial court's finding that section 1281.2(c) applies. [Citation.] A party relying on section 1281.2(c) to oppose a motion to compel arbitration does not bear an evidentiary burden to establish a likelihood of success or make any other showing regarding the viability of the claims and issues that create the possibility of conflicting rulings. [Citation.] An evidentiary burden is unworkable under section 1281.2(c) because the question presented is whether a " 'possibility' " of conflicting rulings exists [citation] and a motion to compel arbitration is typically brought before the parties have conducted discovery." (*Acquire II, supra,* 213 Cal.App.4th at p. 972.)

Second, defendant's mere assertion "there is no real possibility" that any tribunal would rule there was only one occurrence is of no moment. Defendant tells us "[t]he majority of jurisdictions" follow the rule "that multiple acts of sexual abuse against different victims do not constitute one occurrence" and, in a footnote, cites 10 cases from California and other jurisdictions (one of which held otherwise). Defendant presents no analysis or argument as to why and how these cases are analogous to the facts alleged here, and cites no controlling authority from our Supreme Court. It is obvious that an appellate court cannot decide that issue in the absence of a record developed in the trial court.

Third, we see no error in the trial court's analysis. The court explained: "There certainly is a possibility of conflicting

rulings on common issues of law or fact if the [defendant-plaintiff] arbitration were to proceed concurrently with the litigation of the [plaintiff's] case against the insurers. As [plaintiff] notes, its position is that the *Miramonte* litigation represents a 'single occurrence,' entitling it to coverage. While the Court is in no position to make that assessment at this time, the gravamen of this case will require the Court to ultimately resolve this important coverage question. This question will certainly also be part of any arbitration proceeding between [defendant] and [plaintiff]; depending on the outcome of the occurrence question, it may, or may not, trigger potential excess coverage obligations on the part[] of [defendant]. To allow the arbitration to proceed would risk potentially inconsistent results with the Court's ultimate findings in the instant litigation."

Further, the trial court properly rejected the claim defendant repeats on appeal, that even if there were conflicting rulings, "there would be no practical impact on the litigation," because defendant "is a high-level excess carrier and the policy attaches excess of $20 million." Defendant asserts that "even if the $200 million loss alleged by [plaintiff] is divided over the 40 years of coverage, the $5 million assigned to [defendant's] policy year would not impact [defendant's] Policy, which attaches excess of $20 million." Like the trial court, we are not prepared to so conclude as a matter of law. As the court stated: "The Court is not persuaded by [defendant's] argument that [defendant's] potential for coverage, at most, would be for two years, and that any overlap is 'minimal.' The standard under § 1281.2(c) requires only a 'possibility' of conflicting rulings on a common issue of law or fact. Certainly, and at the very least, there is such a possibility here." (Fn. omitted.)

16

## DISPOSITION

The order denying defendant's motion to compel arbitration is affirmed. Plaintiff shall recover its costs on appeal.


GRIMES, J.

WE CONCUR:


BIGELOW, P. J.


SORTINO, J.[*]

---

[*] Judge of the Los Angeles Superior Court, assigned by the Chief Justice pursuant to article VI, section 6 of the California Constitution.

17