Filed 6/24/24  Esparza Enterprises Wage and Hour Cases CA5

## NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

FIFTH APPELLATE DISTRICT

| | |
|---|---|
| Coordination Proceeding<br>Special Title (Rule 3.550(c))<br><br>ESPARZA ENTERPRISES WAGE AND HOR CASES*<br><br>JULIO MAYEN et al.,<br><br>     Plaintiffs and Respondents,<br><br>     v.<br><br>ESPARZA ENTERPRISES, INC.,<br><br>     Defendant and Appellant. | F085395<br><br>(JCCP No. 5064)<br><br>**OPINION** |

APPEAL from orders of the Superior Court of Kern County.  Thomas S. Clark, Judge.†

---

\*       *Mayen v. Esparza Enterprises, Inc.* (Super. Ct. Kern County, No. BCV-18-102526); *Zalazar v. Esparza Enterprises, Inc.* (Super. Ct. Alameda County, No. RG19005022); *Ramirez v. Esparza Enterprises, Inc.* (Super. Ct. Los Angeles County, No. 19STCV22662; *Balcarcel v. Esparza Enterprises, Inc.* (Super. Ct. Kern County, Nos. BCV-19-103107 & BCV-20-100014).

†       Judge of the Kern County Superior Court sitting under assignment by the Chairperson of the Judicial Council.

Roxborough, Pomerance, Nye & Adreani, Michael B. Adreani and Trevor R. Witt for Defendant and Appellant.

Setareh Law Group, Shaun Setareh and William M. Pao for Plaintiff and Respondent, Julio Mayen.

D.Law, Inc., Emil Davtyan, Natalie Haritoonian; David Yeremian & Associates, Inc., David Yeremian; Law Offices of Sahag Majarian II, Sahag Majarian II for Plaintiff and Respondent, Marleny Balcarcel.

-ooOoo-

Over the course of several years, four employees of Esparza Enterprises, Inc., filed separate actions against Esparza alleging wage and hour violations on an individual basis, on behalf of a putative class of Esparza employees, and under the Labor Code Private Attorneys General Act of 2004 (Lab. Code, § 2698 et seq.) (PAGA). The lawsuits were filed in different superior courts throughout the state. Esparza petitioned to coordinate the actions, which was granted, and Kern County Superior Court became the site of the coordinated proceedings.

Nearly four years after the first class-action lawsuit was filed by plaintiff Julio Mayen, Esparza moved to compel arbitration of the individual wage and hour claims asserted by Mayen and another plaintiff in two of the coordinated cases, Marleny Balcarcel. The trial court denied the motions, finding (1) Esparza waived its right to compel arbitration, and (2) the third-party litigation exception to the general rule requiring enforcement of arbitration agreements applied because there were pending actions with the other plaintiffs in the coordinated cases that arose from the same or related transactions, and there was a possibility of conflicting rulings on one or more issues of fact or law. In denying the motions, the trial court also found the Federal Arbitration Act, 9 U.S.C. § 1 et seq. (FAA) did not govern the parties' arbitration agreements and Balcarcel's individual claims were not subject to arbitration.

2.

On appeal, Esparza challenges the trial court's findings, contending that the undisputed facts show it did not waive its right to compel arbitration, and the third-party litigation exception does not apply as there was no possibility of conflicting rulings. As the last issue is dispositive of Esparza's appeal and Esparza fails to meet its burden of showing reversible error on this issue, we affirm.

## FACTUAL AND PROCEDURAL BACKGROUND

Esparza, a farm labor contractor with its main office in Bakersfield, provides labor services to agricultural companies, generally on a seasonal basis. Esparza hired Mayen and Balcarcel for general farm labor work. Mayen was originally employed in July 2016, while Balcarcel was rehired in March 2018.

In October 2018, Mayen filed a putative class action lawsuit against Esparza in Kern County Superior Court alleging nine causes of action: (1) failure to pay overtime; (2) failure to pay minimum wage; (3) failure to provide itemized wage statements; (4) failure to pay wages due upon termination; (5) rest break violations; (6) meal period violations; (7) failure to reimburse expenses; (8) violation of the Migrant and Seasonal Agricultural Worker Protection Act; and (9) unfair competition.[1]

The month after Mayen filed his complaint, Esparza filed its answer to the complaint, in which Esparza asserted as an affirmative defense that the complaint was subject to an arbitration agreement with Mayen and the purported class members.

In October 2019, Esparza filed a petition for coordination of actions with the Judicial Council seeking to coordinate Mayen's action with two other class action lawsuits that were pending against Esparza in Alameda County Superior Court and Los

---

[1] Mayen's complaint is not in the appellate record. The causes of action are taken from the parties' trial court briefs.

Angeles County Superior Court, which were brought by Cesar Zalazar and Juana Guerrero Ramirez, respectively.[2]

Meanwhile, Balcarcel filed two lawsuits against Esparza in Kern County Superior Court. The first, a class action lawsuit filed in October 2019, alleged nine causes of action: (1) failure to pay minimum wages; (2) failure to pay wages and overtime under Labor Code section 510; (3) failure to pay reporting time pay; (4) meal period liability under Labor Code section 226.7; (5) rest break liability under Labor Code section 226.7; (6) violation of Labor Code section 266, subdivision (a); (7) violation of Labor Code section 203; (8) failure to keep required payroll records under Labor Code sections 1174 and 1174.5; and (9) violation of Business and Professions Code section 17200 et seq. (the Balcarcel class action).

In the second lawsuit, filed in January 2020, Balcarcel alleged the following claims under the Labor Code Private Attorneys General Act of 2004 (Lab. Code, § 2698 et seq.) (PAGA): (1) failure to pay minimum wages; (2) failure to pay wages and overtime; (3) meal period liability; (4) rest break liability; (5) violation of Labor Code

---

[2] Code of Civil Procedure section 404 allows a party to a civil action sharing a common question of fact or law with a civil action pending in a different court, to petition the chairperson of the Judicial Council to coordinate the actions. The chairperson assigns the petition "a special title and coordination proceeding number" (Cal. Rules of Court, rule 3.550(c)), and assigns (or authorizes a presiding judge to assign) a coordination judge to decide whether coordination is appropriate (Code Civ. Proc., § 404). If the coordination judge decides coordination is appropriate, the judge selects an appellate court to review decisions from the coordinated proceeding (§ 404.2), and the chairperson of the Judicial Council assigns (or authorizes a presiding judge to assign) a judge to hear the coordinated actions (§ 404.3).

The October 2019 petition for coordination is not in the appellate record. According to Balcarcel and Mayen, the Alameda County Superior Court dismissed the case brought by Cesar Zalazar without prejudice pursuant to the parties' stipulation on August 1, 2022.

section 226, subdivision (a); (6) violation of Labor Code sections 201, 202, 203 and 204; and (7) failure to pay reporting time pay (the PAGA action).**3**

The parties attended a full-day, non-binding mediation on January 17, 2020, which a retired judge conducted. The Kern County Superior Court coordinated the first three cases under JCCP case No. 5064 in January 2020. On March 2, 2020, the Judicial Council issued an order assigning the coordination trial judge to the presiding judge of the Kern County Superior Court. On July 2, 2020, the Kern County Superior Court coordinated two add-on cases: (1) Balcarcel's class action; and (2) a second action filed against Esparza by Juana Guerrero Ramirez in Los Angeles County Superior Court, which alleged only PAGA claims. Finally, on August 28, 2022, Balcarcel's PAGA action was coordinated with the other actions pursuant to the parties' stipulation.

***The Motions to Compel Arbitration***

On August 31, 2022, Esparza filed separate motions to compel arbitration of the individual claims asserted in Mayen's and Balcarcel's complaints and to stay both proceedings. In support of the motions, Esparza submitted Mayen's and Balcarcel's executed "DISPUTE RESOLUTION AGREEMENT" (the arbitration agreements), which have identical terms. The arbitration agreements provide that in the event of a dispute relating to employment, the parties agree that the arbitration agreement "requires all such disputes to be resolved by final and binding arbitration, or individually, and not via a representative or class action. The PARTIES also agree and intend to waive their right to the dispute being heard in a court before a judge or a jury." (Emphasis omitted.)

Section 2 of the arbitration agreement is titled: "<u>WAIVER OF CLASS, COLLECTIVE AND REPRESENTATIVE ACTIONS AND AGREEMENT NOT TO CONSOLIDATE</u>." It provides for a waiver of class actions as follows: "Except for

---

**3** Balcarcel's complaints in the class action and PAGA action are not in the appellate record. The causes of action are taken from the parties' trial court briefs.

5.

those exclusions and prohibitions provided for in federal or state law …, the EMPLOYEE and the COMPANY expressly desire and agree to the following: (1) the EMPLOYEE and the COMPANY shall not file any class-action claim against the other party, whether via arbitration, before a court or otherwise; (2) the EMPLOYEE and the COMPANY SHALL ONLY FILE THEIR INDIVIDUAL CLAIMS FOR ARBITRATION; (3) the EMPLOYEE and the COMPANY hereby waive any capacity to file or pursue or consolidate a class action in any venue, and agree to abstain from doing so; and (4) they shall have no right to arbitrate any dispute that is filed as a class action."

Section 2 also provides for waiver of representative actions as follows: "Except for those exclusions and prohibitions provided for in federal or state law …, the EMPLOYEE and the COMPANY expressly desire and agree to the following: (1) the EMPLOYEE and the COMPANY shall not file any representative-action claim against the other party, whether via arbitration, before a court or otherwise; (2) the EMPLOYEE and the COMPANY SHALL ONLY FILE THEIR INDIVIDUAL CLAIMS FOR ARBITRATION; (3) the EMPLOYEE and the COMPANY hereby waive any capacity to file or pursue or consolidate a representative action in any venue, and agree to abstain from doing so; and (4) they shall have no right to arbitrate any dispute that is filed as a representative action."

Esparza argued that: (1) Mayen's and Balcarcel's claims fell within the scope of the arbitration agreements; (2) the statutory requirements of Code of Civil Procedure section 1281.2[4] to compel arbitration were met; (3) the agreements were enforceable under *Armendariz v. Foundation Health Psychcare Services, Inc.* (2000) 24 Cal.4th 83; (4) enforcement of the arbitration agreements was not precluded by the statutory exceptions of waiver, revocation, or the pendency of a court action or special proceeding

---

[4]     Undesignated statutory references are to the Code of Civil Procedure.

with a third party arising out of the same transaction or series of related transactions; and (5) the agreements were not unconscionable.

With respect to Balcarcel's PAGA action, Esparza argued that under *Viking River Cruises, Inc. v. Moriana* (2022) 596 U.S. 639 (*Viking River*), it could move to compel arbitration of her individual PAGA claims and request dismissal of her non-individual claims because she lacked standing to pursue them. Esparza asserted the trial court must stay all proceedings pending the arbitrator's decision.

In support of each motion to compel, Esparza submitted a declaration from the general manager of its "Union Office," Liliana Briceno, in which she explained the management and administration of Esparza's dispute resolution agreement and the efforts she made to locate plaintiffs' agreements. Briceno stated that when Mayen was originally hired in July 2016, Esparza did not require employees to sign dispute resolution agreements requiring arbitration. Esparza rolled out its dispute resolution program in 2018. During the initial rollout, all agreements were physically provided to employees and after staff reviewed the agreements to ensure they were signed appropriately, they were filed away and stored in boxes in one of Esparza's offices in Bakersfield.

Briceno further explained that in July or August 2021, Esparza began storing newly executed dispute resolution agreements in an electronic filing system. In March 2022, all remaining physical copies of dispute resolution agreements were transferred to another office in Bakersfield, where they were refiled and scanned into the electronic filing system during staff's spare time. The process was "extremely long" as Esparza hires several thousand employees a year.

Briceno declared that in June 2022, she was asked to review the physical and electronic dispute resolution agreement files to determine if they contained signed dispute resolution agreements for Mayen and Balcarcel. She could not find them in the

7.

electronic filing system, so she searched the physical files.  She recovered the signed agreements after searching for a "significant period," as they were not filed correctly.

In support of the motion to compel arbitration of Mayen's claims, Esparza also submitted a declaration from Alex Mejia, the employee relations department manager in Esparza's Coachella office.  Mejia stated that he presents dispute resolution agreements to employees hired in the Coachella Valley and explained that process.  Mejia declared that from a review of the dispute resolution agreement that Mayen signed, he provided Mayen with a copy of the agreement in 2018, and after Mayen signed the agreement, Mejia would have sent it to Esparza's Bakersfield office for filing.

The arbitration agreements showed that Mayen signed the dispute resolution agreement on March 12, 2018, prior to his termination, while Balcarcel signed hers on the date she was rehired—March 14, 2018.  While Mayen's agreement was signed by Mejia on Esparza's behalf, Balcarcel's agreement was signed by Brenda Ramirez, a recruiter in Esparza's Bakersfield office.

One of Esparza's attorneys submitted a declaration in support of each motion.  The attorney stated that when Mayen filed his action in 2018 and Balcarcel filed her first lawsuit in 2019, he asked Esparza's then controller, Irene Borland, to search for their signed arbitration agreements, but Borland advised the attorney she was unable to find them.[5]  The attorney further stated that in June 2022, after the United States Supreme Court issued the *Viking River* decision, he asked Esparza to conduct an additional search for the arbitration agreements.  Briceno then advised him that she was able to find complete and signed copies of the agreements.

Esparza's attorney declared to that point, the parties had engaged in minimal discovery—Esparza answered the complaints, served standard basic individual discovery, including requests for production of documents, special interrogatories, and requests for

---

[5]    Borland passed away in early 2021.

admission—and no depositions had been taken. The attorney further declared that the parties had not substantially invoked litigation machinery, as little discovery and motion practice had been done. Moreover, the parties' litigation efforts had slowed to a virtual stop due to the Covid-19 pandemic and the widespread judicial shutdowns during the first half of 2020. The attorney asserted dates had not been set for trial or for a hearing on a class certification motion.

The attorney stated he asked opposing counsel to stipulate to arbitration of plaintiffs' individual claims, but counsel for Mayen refused and counsel for Balcarcel did not respond. In an e-mail exchange between counsel, Mayen's counsel took the position that Esparza waived the right to compel arbitration after allowing for the mediation, followed by the coordination of cases and many years of litigation, including incurring "significant expense in expert fees."

### *Plaintiffs' Oppositions to the Motions to Compel*

Mayen and Balcarcel each filed an opposition to the respective motions to compel. Mayen argued that the United States Supreme Court's decision in *Morgan v. Sundance, Inc.* (2022) 596 U.S. 411 provided the standard the trial court should use to determine whether a party has waived the right to arbitration under the FAA. Mayen asserted that under that standard, it was clear Esparza intentionally relinquished a known right to compel arbitration by waiting until after *Viking River* was decided to search for the arbitration agreements, as Esparza knew or should have known Mayen signed an arbitration agreement given the process and procedures used to roll out the agreements, and Esparza failed to explain why it waited to search for his agreement since he did not file a PAGA claim.

Mayen also asserted Esparza intentionally relinquished its right to arbitrate by choosing to litigate in court as shown by: (1) deciding not to have anyone attempt to locate the arbitration agreement; (2) litigating Mayen's case for four years and petitioning to coordinate the class actions filed against it; (3) attending mediation on January 17,

9.

2020, without mentioning any arbitration agreement; and (4) expressly representing to plaintiffs and the court that Mayen did not have an arbitration agreement.

Mayen provided some of the procedural history of the cases through the declaration of one of his attorneys.[6] In January 2021, the plaintiffs in the coordinated actions propounded comprehensive written discovery, which Esparza responded to. The parties met and conferred concerning Esparza's responses, but when they could not reach a resolution, an informal discovery conference was held in May 2021. As a result, Esparza agreed to the trial court's recommendation to produce a 10 percent sampling of timekeeping and payroll data for class members, including the named plaintiffs. The parties agreed to stay the coordinated plaintiffs' motion to compel deadline to allow Esparza time to pull the sampling.

In August 2021, the parties filed a joint report for a status conference in which Esparza confirmed its agreement to the sampling production and that it would produce documents on a rolling basis. The issue of arbitration was raised in the report—plaintiffs asserted Esparza waived arguments related to arbitration by litigating the matter, while Esparza stated it did not intend to waive arbitration and reserved the right to enforce the arbitration agreements, including moving to exclude employees who signed such agreements from the putative class. Esparza stated it had a list of employees who signed arbitration agreements that had been kept up to date since the initial roll out of arbitration agreements, but according to its records, none of the named plaintiffs in the coordinated actions had signed such agreements. Esparza requested a hearing date be set within 120 days for its motion to exclude employees who signed arbitration agreements from the putative class.

---

**6** The declaration of the attorney, William M. Pao, is not in the appellate record. We rely on Mayen's memorandum of points and authorities filed in opposition to the motion to compel to supply the summary of Pao's declaration.

10.

The parties then worked on selecting the sampling from records provided and Esparza informed the court it would have initial production by January 2022. This did not happen, however, as Esparza reported in March 2022 that it was preparing the electronic documents for the sampling. On July 8, 2022, Esparza's counsel stated discovery should be stayed because they found arbitration agreements for some, but not all, of the named plaintiffs in the coordinated cases. Esparza, however, did not file its motion to compel arbitration until August 31, 2022.

In her opposition, Balcarcel argued: (1) the arbitration agreement had not been properly authenticated; (2) the representative claim waiver was invalid and unenforceable because it constituted a mandatory wholesale waiver of her ability to bring a PAGA representative action; (3) even if she was compelled to arbitrate her individual PAGA claims, she could not be compelled to arbitrate the non-individual component of the representative PAGA claim; (4) the request to dismiss the representative PAGA claim should be denied because she retained standing to pursue that claim; and (5) if the trial court compelled her to arbitrate the individual PAGA claim, there was no reason to stay the entire coordinated action as to those plaintiffs who did not sign an arbitration agreement.

Balcarcel also argued the motion to compel was counterintuitive and contrary to Esparza's own words. Balcarcel asserted Esparza was eager to coordinate all cases and "worked tirelessly to encompass all the present actions under one coordinated proceeding," by filing the petition for coordination and the petition for add-ons. Balcarcel quoted from Esparza's October 4, 2019 memorandum in support of the petition for coordination as follows: " 'Without coordination, there will be significant unnecessary duplication… Such duplication will incur a corresponding drain on limited judicial resources, manpower and court calendars as well as incur unnecessary duplicative attorneys' fees and costs. The coordination of these actions will clearly promote the efficient utilization of judicial facilities, manpower and the calendar of the

11.

courts. It simply makes no sense to have three separate courts and three separate judges presiding over the same or similar parties and deciding the same claims for the same classes." Given these statements, Balcarcel argued, it was difficult to conceive how Esparza believed that separating Balcarcel's PAGA claims into two components and proceeding in arbitration in hers and Mayen's cases while concurrently litigating the other cases in the superior court was an " 'efficient utilization' " of the court and its resources.

Balcarcel further argued the trial court should deny the motion in its entirety because Esparza waived its right to compel arbitration by waiting three years to bring its motion "while its tactics required significant motion practice and discovery battles." Balcarcel asserted Esparza was not entitled to wait until the *Viking River* case was decided in its favor to file its motion, and it could have moved to compel arbitration at the outset of the litigation.

Finally, Balcarcel argued that given the ongoing coordinated proceedings, the representative PAGA claim component should not be stayed until completion of the arbitration of her individual claims.

### Esparza's Reply Papers

Esparza replied to Mayen's and Balcarcel's oppositions. In reply to Mayen's opposition, Esparza argued it did not waive its right to compel arbitration as: (1) it advised the plaintiffs from the beginning of litigation that arbitration agreements existed for the majority of the putative class members which Esparza intended to enforce; (2) it was unaware of the existence of Mayen's arbitration agreement despite its due diligence and it moved to compel arbitration as soon as it became aware of the agreement; (3) the case was dormant for a significant period due to the Covid-19 pandemic; (4) most of the discovery conducted had been limited to individual discovery which the parties would have a right to conduct in arbitration; (5) no depositions had been taken and the parties had not discussed complying with the procedure that would allow Esparza to disclose

12.

class contact information; and (6) the plaintiffs only tried to expedite discovery on a class-wide basis after Esparza advised of its intent to move to compel arbitration.

In its reply to Balcarcel's opposition, Esparza argued that because the parties agreed to split a PAGA action into individual and non-individual claims, the trial court was required to compel all of Balcarcel's individual claims to arbitration and dismiss the class and PAGA claims for lack of standing.  Esparza further argued it did not waive the right to arbitration citing the same grounds stated in its reply to Mayen's opposition. Esparza added that it was prohibited from moving to compel Balcarcel's PAGA claims to arbitration until *Viking River* was decided, and it moved for arbitration within two months of that decision.

### The Trial Court's Statement of Decision

The trial court held a hearing on Esparza's motions to compel arbitration on September 29, 2022.[7]  After the trial court issued its tentative ruling denying the motions, the parties argued and submitted the matter.  At the request of Esparza's counsel, the trial court subsequently issued a statement of decision in which it found the following:

(1)  Esparza substantially delayed bringing the motion in Mayen's case almost four years after Mayen's complaint was filed on October 4, 2018;

(2)  Esparza substantially delayed bringing the motion in Balcarcel's cases almost three years after Esparza filed the petition for coordination of Balcarcel's class action as an add-on case on December 12, 2019,[8] in which Esparza took the position that the Balcarcel action shared common issues of law and fact with the previously pending actions;

---

[7]     Esparza elected to proceed without a reporter's transcript; therefore, there is no transcript of the hearing in the appellate record.

[8]     The December 12, 2019 petition for coordination is not in the appellate record.

13.

(3)  Esparza knew or should have known it had signed arbitration agreements with Mayen and Balcarcel based on statements made in the declarations of Briceno and Mejia;

(4)  Esparza actively litigated these actions for nearly four years, engaging in class-wide discovery efforts, mediation, and case status conferences, which was inconsistent with individual arbitration;

(5)  Mayen and Balcarcel would suffer prejudice if the motions were granted because Esparza's delay in bringing the motions unnecessarily extended the time their cases and the consolidated cases were pending, and caused Mayen and Balcarcel to expend resources on litigation activities inconsistent with arbitration such as class-based discovery efforts (as disclosed in the parties' status report filed on August 25, 2022)[9] and through significant expense in expert witness fees (as stated in e-mail communications provided with the moving papers);

(6)  under all the circumstances, Esparza's delay in bringing the motions was unreasonable;

(7)  the motions seek arbitration pursuant to section 1281.2, which provides an exception to compulsory arbitration if a party to the arbitration is also a party to a pending court action with a third party arising out of the same transaction or series of transactions and there was a possibility of conflicting rulings on common issues of fact or law;

(8)  Esparza admitted in its petition filed on November 18, 2019,[10] that the petition was made on the grounds that the three actions:  (a) " 'contain allegations raising common questions of law and fact, and coordination of these actions will promote the ends of justice,' " (b) the investigation and discovery in each action would be " 'virtually

---

[9]     The August 25, 2022 status report is not in the appellate record.

[10]     Presumably this is the petition to coordinate the actions.  The November 18, 2019 petition is not included in the appellate record.

identical and the issues of law and fact to be decided are likewise identical,' " and (c) " 'judicial resources and facilities will be conserved, the burden on the Court calendars will be lessened, and the likelihood of settlements of the claims will be substantially increased' ";

(9)  due to the pending actions with third parties, i.e., the other plaintiffs in the Judicial Council proceeding, there was an increased risk of conflicting rulings on one or more common issues of law or fact;

(10)  the trial court relied on these representations in decisions it made up to the present and believed these representations to be true and that other counsel relied on them;

(11)  Mayen's complaint does not contain PAGA claims;

(12)  the court could not conclude the FAA applies or preempts any conflicting state law as Esparza's moving papers do not include declarations setting forth facts attesting to interstate commerce or argue facts that would support the FAA's application;

(13)  based on the totality of the foregoing findings, and even though Balcarcel pled a PAGA claim, Esparza waived any right it might have had to compel arbitration; and

(14)  the arbitration agreements were entered into many years before the *Viking River* decision; therefore, the parties could not have contemplated or consented to arbitrate individual claims while dismissing representative claims.

The trial court subsequently entered orders denying the motions to compel.

## **DISCUSSION**

Esparza challenges the trial court's denial of its motions to compel arbitration on multiple grounds.  Esparza contends the trial court erred in:  (1) finding the FAA did not govern the arbitration agreements; (2) finding Esparza waived its right to compel arbitration of plaintiffs' individual claims; (3) finding Balcarcel's individual PAGA

15.

claims were not subject to arbitration; and (4) refusing to enforce the arbitration agreement under the third-party litigation exception of section 1281.2, subdivision (c).

We need not decide the first three issues, however, because the last issue is dispositive. Even if the FAA governs the arbitration agreements, Esparza did not waive its right to compel arbitration, and Balcarcel's arbitration agreement requires sending her individual claims to arbitration, Esparza has not shown that the trial court abused its discretion in declining to send the plaintiffs' individual claims to arbitration under the third-party litigation exception of section 1281.2, subdivision (c).[11]

### *Applicable Law and Standard of Review*

California and federal law have strong public policies in favor of arbitration as a speedy and relatively inexpensive means of dispute resolution. (*St. Agnes Medical Center v. PacifiCare of California* (2003) 31 Cal.4th 1187, 1195.) "A trial court is required to order a dispute to arbitration when the party seeking to compel arbitration proves the existence of a valid arbitration agreement covering the dispute." (*Laswell v. AG Seal Beach, LLC* (2010) 189 Cal.App.4th 1399, 1404–1405.) But a trial court may deny arbitration if the case falls into one of the three exceptions identified in section 1281.2 or if grounds exist to revoke the parties' agreement. (§§ 1281, 1281.2; *Laswell*, at p. 1405.)

---

**11** Even if the arbitration agreements are governed by the FAA as Esparza contends, the trial court may nevertheless apply the California procedural rule set forth in section 1281.2, subdivision (c). A court is precluded from considering whether to apply section 1281.2, subdivision (c) only when an arbitration provision " '*expressly* designate[s] that any arbitration proceeding should move forward under the FAA's procedural provisions rather than under state procedural law.' " (*Los Angeles Unified School Dist. v. Safety National Casualty Corp.* (2017) 13 Cal.App.5th 471, 482.) As the arbitration agreements at issue here "do[] not even mention the FAA, much less expressly adopt its procedural rules" (*Avila v. Southern California Specialty Care, Inc.* (2018) 20 Cal.App.5th 835, 841), there is no bar to applying section 1281.2, subdivision (c).

Two exceptions are raised in this case. The court need not compel arbitration if it determines the petitioner waived the right to arbitrate (§ 1281.2, subd. (a)), or if a party to the arbitration agreement is also a party to a pending court action with a third party "arising out of the same transaction or series of related transactions and there is a possibility of conflicting rulings on a common issue of law or fact." (§ 1281.2, subd. (c).) The latter subsection "addresses the peculiar situation that arises when a controversy also affects claims by or against other parties not bound by the arbitration agreement." (*Cronus Investments, Inc. v. Concierge Services* (2005) 35 Cal.4th 376, 393.) Section 1281.2, subdivision (c), "was intended primarily to prevent conflicting rulings resulting from arbitration proceedings or other related litigation arising out of the same transaction." (*Whaley v. Sony Computer Entertainment America, Inc.* (2004) 121 Cal.App.4th 479, 488.)

If the trial court determines the requirements of section 1281.2, subdivision (c), are satisfied, it may choose among several alternatives: (1) it "may refuse to enforce the arbitration agreement and may order intervention or joinder of all parties in a single action"; (2) it "may order intervention or joinder as to all or only certain issues"; (3) it "may order arbitration among the parties who have agreed to arbitration and stay the pending court action … pending the outcome of the arbitration proceeding"; or (4) it "may stay arbitration pending the outcome of the court action." (§ 1281.2.)

"When section 1281.2[, subdivision] (c) applies, 'the trial court's discretionary decision as to whether to stay or deny arbitration is subject to review for abuse.' [Citations.] The trial court's decision whether section 1281.2[, subdivision] (c) applies, however, is reviewed under either the substantial evidence standard or the de novo standard. If the court based its decision on a legal determination, then we adopt the de novo standard. [Citations.] If the court based its decision on a factual determination, then we adopt the substantial evidence standard of review. [Citation.] Whether there are conflicting issues arising out of related transactions is a factual determination subject to

17.

review under the substantial evidence standard." (*Acquire II, Ltd. v. Colton Real Estate Group* (2013) 213 Cal.App.4th 959, 971–972.)

### *The Third-Party Litigation Exception*

The trial court found the third-party exception applied because there were pending actions with third parties, namely, the other plaintiffs in the coordinated cases, that increased the risk of conflicting rulings on one or more common issues of law or fact. The trial court found Esparza conceded there were common issues of law and fact: (1) in its November 18, 2019 petition for coordination of the first three coordinated actions, when it stated the cases raised common questions of law and fact and there were identical issues of law and fact to be decided; and (2) in its December 12, 2019 petition for coordination to add on Balcarcel's class action, when it took the position that that case shared common issues of law and fact with the previously pending actions involving third-party plaintiffs. Accordingly, the trial court refused to enforce the arbitration agreement with respect to Mayen's and Balcarcel's individual claims.

Esparza contends the trial court erred in finding there was a possibility of conflicting rulings on common issues of fact or law. Esparza asserts the trial court misinterpreted the statements it made in the November 2019 petition for coordination, as it was not asserting the plaintiffs' individual claims contained common issues of law and fact, but rather that the class and representative PAGA allegations, which involved the same groups of employees, raised common questions of fact and law related to those allegations. Esparza contends those issues are specific to class and PAGA actions and the arbitration of an employee's individual claims would not result in conflicting rulings because those claims are specific to that employee. Esparza asserts that because an arbitrator's ruling on whether Mayen or Balcarcel suffered the alleged wage and hour violations would simply resolve their individual claims, the ruling would have no bearing or effect on the rulings in the other class action that is pending against Esparza.

18.

Therefore, Esparza argues, section 1281.2, subdivision (c), does not apply, and the trial court should have granted his motions to compel arbitration.

We begin with the record before the trial court when it denied Esparza's motions to compel arbitration. Although the allegations of the parties' pleadings may constitute substantial evidence sufficient to support a trial court's finding that section 1281.2, subdivision (c) applies (*Abaya v. Spanish Ranch I, L.P.* (2010) 189 Cal.App.4th 1490, 1498–1499), Esparza contends the material facts are undisputed and the enforceability of the arbitration agreements presents a question of law. (See *Acquire II, Ltd. v. Colton Real Estate Group*, *supra*, 213 Cal.App.4th at p. 972.)

The standard of review, however, is not determinative here. Whether reviewing the matter de novo, as Esparza urges, or for substantial evidence, we are compelled to affirm the order denying the motions to compel arbitration due to an inadequate record.

In conducting our appellate review, we are guided by "the familiar rule that the decision under review is presumed correct on matters where the record is silent." (*Cable Connection, Inc. v. DIRECTV, Inc.* (2008) 44 Cal.4th 1334, 1362.) The appellant "has the burden of showing reversible error by an adequate record." (*Ballard v. Uribe* (1986) 41 Cal.3d 564, 574.) " ' "A necessary corollary to this rule is that if the record is inadequate for meaningful review, the appellant defaults and the decision of the trial court should be affirmed." ' " (*Jameson v. Desta* (2018) 5 Cal.5th 594, 609.) Thus, where the appellant fails to provide an adequate record on an issue, that issue must be resolved against the appellant. (*Ibid.*; *Maria P. v. Riles* (1987) 43 Cal.3d 1281, 1295.)[12]

---

[12]    As this court has reminded litigants: "When practicing appellate law, there are at least three immutable rules: first, take great care to prepare a complete record; second, if it is not in the record, it did not happen; and third, when in doubt, refer back to rules one and two." (*Protect Our Water v. County of Merced* (2003) 110 Cal.App.4th 362, 364.)

While Esparza contends the trial court misinterpreted Esparza's statements in the November 2019 petition for coordination, the petition is not in Esparza's appendix.[13] (Cal. Rules of Court, rule 8.124(b)(1)(B) [appendix must contain any item "that is necessary for proper consideration of the issues"].) The appendix also does not contain the December 2019 petition to add Balcarcel's class action to the coordinated cases, which the trial court relied on to find that case shared common issues of law and fact with the coordinated cases. And although Esparza argues Mayen's and Balcarcel's individual claims do not present common issues of law or fact that would result in conflicting rulings with the other coordinated cases, the appendix does not include the complaints from any of the coordinated cases, which are necessary to determine whether there is a risk of conflicting rulings.

Without the petitions for coordination and the complaints, we cannot evaluate Esparza's arguments. Esparza discusses this issue in the abstract, asserting that arbitrating individual wage and hour claims would not result in conflicting rulings with the wage and hour claims alleged by the other plaintiffs in the coordinated cases. But we cannot assess this argument without examining the claims alleged in the complaints in the coordinated cases.

Esparza complains that if wage and hour litigation triggers the exclusionary effects of section 1281.2, subdivision (c), an employer faced with a class-action lawsuit for wage and hour infringements brought by an employee who did not sign a binding arbitration agreement would be unable to enforce any arbitration agreements it has with the class members. But the trial court did not find that there was a risk of conflicting rulings

---

[13] Esparza's appendix includes the motions to compel arbitration and supporting papers, the oppositions to those motions (except for Pao's declaration), Esparza's reply papers, the statement of decision, the orders denying the motions to compel, and the notices of appeal. Mayen and Balcarcel submitted a respondents' appendix, which includes Esparza's answer to Mayen's complaint, Esparza's March 2019 case management statement, and an August 2021 joint status report.

between each named plaintiff (Mayen or Balcarcel) and the alleged class members. Rather, the trial court determined there were common issues of fact and law that could result in conflicting rulings between Mayen and Balcarcel as named plaintiffs and the named plaintiff in the other coordinated action, Ramirez. And as we have stated, without the petitions for coordination and complaints, we cannot determine whether the trial court erred in finding there was a risk of conflicting rulings on one or more common issues of fact or law.

Moreover, Esparza's argument overlooks that a trial court has four options to address the risk of conflicting rulings, only one of which is to refuse to enforce the arbitration agreement. (See, e.g., *Henry v. Alcove Investment, Inc.* (1991) 233 Cal.App.3d 94, 101–102 [the Legislature made stay orders in cases involving third parties discretionary to avoid gamesmanship].) A trial court has the option of (1) ordering intervention or joinder of all or only certain issues, (2) ordering arbitration among the parties who agreed to arbitration and stay the pending court action pending the outcome of the arbitration, or (3) staying arbitration pending the outcome of the court action. (§ 1281.2.)

Thus, it is not a foregone conclusion, as Esparza seems to assert, that an employer cannot enforce arbitration agreements it has with class members when the named plaintiff does not have such an agreement. (See, e.g., *Madden v. Kaiser Foundation Hospitals* (1976) 17 Cal.3d 699, 714 [joining blood banks as defendants did not empower the plaintiff to avoid her duty to arbitrate medical malpractice claim against Kaiser].) Rather, the application of section 1281.2 depends on whether there is a risk of conflicting rulings on common issues of law or fact. The remedy to address that risk is left to the trial court's discretion. (*Cronus Investments, Inc. v. Concierge Services*, *supra*, 35 Cal.4th at p. 393 [¶ 1281.2, subd. (c) gives trial courts discretion not to enforce the arbitration agreement "to avoid potential inconsistency in outcome as well as duplication of effort"].)

Esparza does not argue the trial court abused its discretion in declining to order Mayen's and Balcarcel's individual claims to arbitration under section 1281.2, subdivision (c), rather than selecting another option.  In any event, we cannot assess such a claim for the same reason we cannot determine whether section 1281.2, subdivision (c), applies in the first instance—we do not have an adequate record.  As such, we have no choice but to affirm the trial court's decision to deny Esparza's motions to compel arbitration.

## DISPOSITION

The orders denying Esparza's motions to compel arbitration are affirmed.  Respondents shall recover their costs on appeal.


DE SANTOS, J.

WE CONCUR:


POOCHIGIAN, Acting P. J.


FRANSON, J.